# CITY OF ST. LOUIS to use of CARROLL-PORTER BOILER & TANK COMPANY, Appellant, v. PARKER-WASHINGTON COMPANY and TITLE GUARANTY & SURETY COMPANY, Appellants.

### In Banc, June 30, 1917.

1. **REFERENCE: Findings: Review by Court.** If by reason of the extended account involved the case is one in which the trial court could compel a reference, the trial court may review the evidence and findings of the referee and make its own findings of fact, notwithstanding the parties consented to the appointment of a referee.

2. **FINDINGS OF TRIAL COURT: Review on Appeal.** Where the pleadings evidence an action at law rather than a suit in equity, the findings of fact by the trial court, if supported by substantial evidence, are binding upon the appellate court, and the weight of the conflicting evidence will not be determined; and that is the rule where the trial court has set aside the findings of the referee, and substituted findings of its own—the presumption of correct decision lying with the action ·of the court, rather than with the action of the referee.

   *Held*, by BOND, J., dissenting, that cases falling within the terms of the statute providing for compulsory reference are reviewable on appeal, like suits in equity.

3. ———: **Equivalent to Special Verdict.** Where by reason of an extended account involved the court could under the statute have compelled a reference in an action at law, the findings of the referee, if approved by the trial court, have on appeal the status of a special verdict, and cannot be reviewed if there is substantial evidence to support them. [BOND, J., dissenting.]

4. **FOREIGN CORPORATION: Doing Business in Missouri Without License.** A foreign corporation which agreed with a Missouri company to manufacture and deliver water pipe, free on board of cars at a designated point in this State, at a designated price per linear foot, to be placed in the flow line, not by it, but by the purchaser, was not doing business in the sense of the statute which forbids such a corporation to do business in this State without a license.

5. **PARTIES TO ACTION: Suit by City to Use of Contractor.** A suit by a corporation which furnishes pipe to a private company to be used in the construction of a city water plant, should be

brought in the name of the city to the use of such corporation, where the bond sued on provided that suit may be entered upon the bond by the city at the instance of any materialman and shall be instituted to the use of such materialman.

6. **PURCHASE OF PIPE:** Acceptance: Counterclaim. Where the contract between a foreign corporation to furnish water pipe to be used in a city water plant and the contractor, made the contract between the city and said contractor a part of said contract, and the contract with the city provided that the pipe should stand every requirement and test of the city's water commission and be fully in accordance with the contract between the city and said contractor and that the final pressure-test should be made after the pipes were placed in the flow line, it cannot be held that the pipe was inspected and accepted by the city at the factory in the foreign State, although the city had an inspector at the factory to watch the manufacture of the steel going into the pipes and the contract provided for such an inspection and also a test of strength. The pipe was not accepted by the city until accepted by the city water commissioner and the final pressure-test made after the pipes were in place; and consequently the counter-claim of the contractor for a reduction from the purchase price on the ground that at the pressure-test some of the pipes proved defective, was not foreclosed.

7. ———: Liquidated Damages: Penalty: Delay in Completing Contract. A provision in a contract for the purchase and delivery of water pipe providing for a deduction of $25 per day as liquidated damages for delay in completing the delivery within a designated time, may, under all the facts and circumstances, be intended by the parties to provide a penalty to the amount of actual damages due to the delay, and not for liquidated damages in a definite amount; and if the contract itself contemplates delays over which the contractor was to have no control, the provision should be held to be a mere penalty, and not to intend liquidated damages.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Judson, Green & Henry* for plaintiff.

(1) Under the contract and specifications in this case plaintiff's responsibility ceased, so far as the quality and condition of the pipe was concerned, when it had been duly inspected and accepted by the representative of the city of St. Louis. There is no evidence of any particular

or substantial injury received by the pipe in the course of transportation. Therefore, the acceptance of the pipe by the city's representative, after he had duly inspected and tested it, as specified in the contract, terminated all liability or responsibility on the part of plaintiff, as between plaintiff and these defendants. Schaffer v. Gildea, 3 Colo. 15. Where a contract provides that the architect shall pass upon all materials used in construction and condemn defective materials, which shall be promptly removed by the contractor, the failure of the architect to object as the work progressed constitutes a waiver. Siebert v. Roth, 118 Wis. 250; Laycock v. Moon, 97 Wis. 59; Lime Co. v. Shores, 105 Wis. 122; Electric Co. v. Iron Works, 116 Mich. 293; McConnell v. Water Co., 149 Cal. 60. (2) The evidence shows that each and every delay for which damages are claimed by the defendant, was caused either by the City of St. Louis and its agents, or by the Parker-Washington Company. In no instance was the Carroll-Porter Company to blame for any delay. The referee was correct in reporting that this action is in proper form. St. Louis to use v. Von Phul, 133 Mo. 561; Kansas City ex rel. v. Surety Co., 186 Mo. 281. While the Carroll-Porter Company is a foreign corporation, the delivery of the pipe sued for to the Parker-Washington Company, in the city of St. Louis, under the contract offered in evidence, was not such a transaction of business in the State of Missouri as would be in violation of our statutes. R. S. 1899, sec. 1025. Heating Co. v. Fixture Co., 60 Mo. App. 155; Woolen Mills v. Evans, 84 Mo. App. 450; Frick v. Marshall, 86 Mo. App. 472; Bruner v. Plow Co., 168 Fed. 218. The Carroll-Porter Company at no time had or maintained any office in this State or employed any local agent in connection with the contract in question. The contract was signed by the Carroll-Porter Company's president in St. Louis, Missouri, and by its secretary, and the corporate seal attached in the State of Pennsylvania; and the pipe was manufactured in the State of Ohio, and plaintiff's duties under the contract terminated immediately upon the arrival of the pipe in St. Louis on cars of the carrier companies. This did not constitute the trans-

action of business within the State of Missouri; and if our statute should be so construed, it would be unconstitutional as an unlawful interference with interstate commerce. Shoe Co. v. Rubber Co., 156 Fed. 1; Bruner v. Plow Co., 168 Fed. 218. (4) The Parker-Washington Company received and accepted this pipe, used it on the construction of its flow line, and collected from the city the full contract price therefor. It is therefore bound, when sued on the contract for the contract price, to pay the amount agreed upon, less such sums, if any, as it was compelled to expend in remedying defects in plaintiff's shop work. The fact that the shop work was defective, if it was defective, does not prevent plaintiff from suing on the contract for the contract price, under the facts we have here. Brown v. Weldon, 99 Mo. 565; Triplett v. Montgomery, 81 Mo. App. 141. The defendant cannot recover any damages at $25 per day for "delays" because the city extended the time for the performance of the work, and the Parker-Washington Company did not suffer any damage from such delays. That clause of the contract is a penalty clause and not a liquidated damage clause. Connelly v. Priest, 72 Mo. App. 673; Parlin v. Bank, 84 Mo. 67; Zimmermann v. Conrad, 74 S. W. 139.

*S. Mayner Wallace, Wm. R. Orthwein* and *Shepard Barclay* for defendants.

(1) The relator is a foreign corporation and did not have a license as such to do the business it agreed to do as sub-contractor for the construction of the flow line in Missouri, and hence cannot recover. R. S. 1909, secs. 3037-40. (2) The construction of the flow line for the city of St. Louis, under its contract with the P.-W. Co., required the steel pipe to be furnished by relator in certain definite forms to be installed in fit condition for the use required. The pipe was to be made to conform to city inspection "complete in place" and to be delivered by relator to the purchaser in Missouri. The business was in this State, and was not interstate commerce. Bacon v. Illinois. 227 U. S. 504; Glue Co. v. Glue Co., 187

U. S. 611; Anglo-Am. Pro. Co. v. Davis Co., 191 U. S. 373; Shoe Co. v. Ramlose, 210 Mo. 631; Tomson v. Assn., 129 N. W. 529; Railroad v. Const. Co., 162 Ala. 396; Oil Co. v. Com., 52 S. E. (Va.) 390; Parke-Davis v. Mullett, 245 Mo. 168; Zinc Co. v. Mining Co., 221 Mo. 7; Chicago Co. v. Simms, 197 Mo. 507; Buffalo Co. v. Penn. Co., 178 Fed. 696; Banker v. Pennsylvania, 222 U. S. 210; Tilden v. Blair, 21 Wall. 241. (3) The relator pleads full compliance with the contract and the testimony shows there was no such compliance. A recovery in this State of reasonable value for work or materials done or furnished is not recoverable on an allegation of performance of the contract under which the same were done or furnished. Everman v. Association, 61 Mo. 489; Hayes v. Bunch, 91 Mo. App. 467; Wade v. Nelson, 119 Mo. App. 289; Huston v. Tyler, 140 Mo. 252; Skinner v. Young, 106 Mo. App. 617; Reifschneider v. Beck, 148 Mo. App. 725; Raming v. Railway, 157 Mo. 506; Brown Co. v. MacArthur, 236 Mo. 51. (4) The amount agreed to be paid by the relator (at rate of $25 per day) after default as liquidated damages was properly so estimated, as the uncertain nature and extent of the injury to the general construction work of the entire flow line made such agreement proper and appropriate. Tompson v. St. Charles County, 227 Mo. 237; Malone v. City, 147 Pa. St. 416; Clark v. Barnard, 108 U. S. 461; Kemp v. Ice Co., 69 N. Y. 45; May v. Crawford, 150 Mo. 504. (5) Where the nature of the damage is uncertain, such a provision as is here shown is valid and enforceable. Parker-Washington Co. v. Chicago (unreported), Ill. App. (March 5, 1914.)

GRAVES, C. J.—In the lower court this case was first heard by a referee. This referee made a complete finding of facts, and stated his conclusions of law. Such referee recommended judgment for relator in the sum of $27,513.85, and to his report both parties filed exceptions. Relator's exceptions were, by the court, sustained in part and overruled in part. Defendants' exceptions were overruled *in toto*. Both sides have appealed.

The court gave judgment for relator in the sum of $38,441.28. The record recites that the reference was by consent, the order therefor reading:

"Tuesday, January 5, 1909.

"Now at this day come the parties, plaintiff and defendants, by their respective attorneys, and consent and agree that this cause may be referred to Francis J. Mc-Master, Esq., whereupon it is ordered by the court that this cause be, and the same is hereby referred to Francis J. McMaster, Esq., to try all the issues involved therein, and to report his findings and proceedings to the court with all convenient speed."

The referee has, with great care, outlined the case and the pleadings therein, and this we borrow from him:

"This suit was instituted by plaintiffs to recover from defendants the unpaid balance of the contract price for certain materials furnished defendants, the Parker-Washington Company, under a contract with it, to be used by it in constructing what is known as a 'flow line,' for the city of St. Louis, from the Chain of Rocks to the Baden Pumping Station, under and in pursuance of a contract between said city and said defendants, and in pursuance of Ordinance No. 21807 of said city, approved March 24, 1905.

"Plaintiff's petition shows that this suit was instituted in the name of the city of St. Louis to the use of Carroll-Porter Boiler & Tank Company against the Parker-Washington Company, and the Title Guaranty & Surety Company of Scranton, Pennsylvania, the latter company being the company that executed the bond, required by the city of St. Louis from the Parker-Washington Company, for the faithful performance of its contract with the city.

"The petition further alleges that the Carroll-Porter Company was incorporated under the laws of the State of Pennsylvania, and that the Surety Company was incorporated under the laws of the State of Pennsylvania, and further alleges, by an amendment, that the Surety Company 'has been duly authorized to do business in this

State under the statutes relating to Foreign Insurance Companies.'

"That on May 2, 1905, the Parker-Washington Company made a contract with the city of St. Louis, hereinafter called 'the City,' under its charter and ordinance, to construct and lay certain piping, complete in place, from Chain of Rocks to Baden Pumping Station. That the work was to be done under the direction and subject to the inspection of the Water Department of the city, the consideration being $478,000, which was to be paid on monthly estimates, less fifteen per cent on the contract price, which latter was to be paid after final acceptance by the city.

"That the Parker-Washington Company made and delivered to the city its bond signed by said Surety Company in the sum of $126,660.62 for the faithful performance of its contract, and would, when the work was completed, pay the proper parties all amounts due for material and labor used.

"And the bond further provided that it could be sued on in the name of the city of St. Louis to the use of any material-man.

"That after the contract was awarded the Parker-Washington Company, the latter on the 22nd day of May, 1905, made a contract with the Carroll-Porter Company to furnish and deliver the pipe and appurtenances called for by the contract between the Parker-Washington Company and the city, in such quantities as and when called for by the Parker-Washington Company. That this contract referred to the contract between the Parker-Washington Company and the city, and provided that the Carroll-Porter Company should complete the delivery of the entire requirement of the 'said pipe and appurtenances.' That it was to be paid by the Parker-Washington Company, monthly, the sum of $14.25 per linear foot of pipe delivered, free on board cars at waterworks in Baden, the payments to be made on the 10th of the month, for pipe delivered the previous month, save fifteen per cent of the amount, which latter was to be retained until fifteen days

after final acceptance of the pipe in place by the city, when this fifteen per cent was to be paid.

"That plaintiff has fully complied with all the terms and conditions of its contract. That the construction of the pipe and appurtenances was superintended at its factory by inspectors of the Water Department of the city, and that the same had been constructed, delivered and accepted by the Parker-Washington Company (hereinafter designated as defendant) and the city, as in full compliance with the plans and specifications of the principal contract.

"That the work under the principal contract had been completed and accepted by the city and the total amount due defendant was paid in full by the city on the 17th day of April, 1908.

"That although defendant had been paid in full and more than fifteen days had elapsed since such final payment, plaintiff had not been paid the amount due it for material and labor furnished and employed therein. That $11,644.81 was due from defendant to plaintiff prior to the acceptance of the work by the city, which has not been paid, though often demanded, and in addition fifteen per cent, which had been reserved until the acceptance of the work by the city and fifteen days thereafter, amounting to $33,710.79, had not been paid, although the period of fifteen days had expired, making a total of $45,357.50 due plaintiff from defendant, and which was unpaid although often demanded.

"That the Title Guaranty & Trust Company, surety for defendant, had changed its name since executing the bonds to the Title Guaranty & Surety Company of Scranton, Pennsylvania, and was thus impleaded in this cause. That there had been a breach of said bond by defendant and the Surety Company for the faithful performance of the principal contract, in that defendant had failed to comply with the terms of the principal contract by refusing to pay plaintiff the amount due it under contract for materials furnished and labor employed in its performance, and then claimed that a cause of action had accrued to the city of St. Louis to the use of the Carroll-Porter

Boiler & Tank Company, against defendant and the Title Guaranty & Surety Company, and asking judgment for the penalty of the bond, the sum of $126,660.62 and execution for the amount due plaintiff, to-wit, the sum of $45,357.50, with interest and costs.

"The Parker-Washington Company's answer admits its incorporation and that of the Surety Company as alleged in the petition, and further answering alleges:

"1. That the city of St. Louis has no warrant or authority to bring or maintain this action, and that it has no legal capacity to maintain this action in the manner and form that the same is brought.

"2. That the Carroll-Porter Boiler & Tank Company has no legal capacity to maintain this action, because it has never been licensed or authorized to do business in this State.

"3. That there is a defect of parties plaintiff, because the Carroll-Porter Company is not authorized, empowered or licensed to bring or maintain this action in this State, and for these reasons asks to be discharged with its costs.

"4. Defendant then pleads a counterclaim and setoff against the plaintiff, and alleges therefor the contract between defendant and the Tank Company entered into on the 22nd day of May, 1905, whereby the plaintiff, the Tank Company, agreed to furnish and supply the pipe, together with all incidentals and appurtenances (not including valves) necessary to complete the contract, made by defendant with the city for building, complete in place, the flow line, and that the appurtenances included angle irons, cast steel manhole covers and saddles with necessary extensions and the 36-inch and 12-inch flange connections, and all field rivets, the pipe to be made in sections and with curves, the total amount of which was to be about 19,634 linear feet, according to the plans and specifications of the contract between defendant and the city, which were made a part of the contract between plaintiff and defendant, and that said pipe with all appurtenances was to be delivered by plaintiff to defendant F. O. B. cars at Waterworks, Baden Station, St. Louis, Mo.

"That according to the agreement plaintiff was to deliver these materials in such quantities and as and when called for by defendant, at a rate not less than 100 linear feet per day, if required, and to begin delivery forty-five days after date of contract, and complete the delivery within eight months from said date.

"That plaintiff agreed to pay defendant $25 per day as liquidated damages for each and every day it was in default.

"That plaintiff guaranteed and warranted that the materials furnished should stand every requirement and test of the Water Commissioner of the city and be in accordance with the contract between the city and defendant, and would hold defendant harmless and indemnify it against claims and demands of every person on account of any labor or materials furnished thereunder, or of the performance of said contract by or on the behalf of plaintiff or otherwise on its account.

"The plaintiff did not perform its contract, but violated it in the following particulars:

"(a) That it failed to furnish such materials in such form as were required by the plans and specifications. It delayed and refused to furnish same promptly. That same, when furnished, were improperly curved and improperly shaped, so they could not be used as intended, without great labor and expense, which defendant was obliged to expend thereon to make them conform with the plans and specifications.

"(b) That plaintiff failed to furnish several items agreed to be furnished.

"(c) That plaintiff failed to furnish the material within the time agreed upon, and that much of the pipe furnished was found defective in this, that much of its riveting did not register, that it was imperfect in structure, and so adjudged by the inspectors for the city, so that defendant was put to large expense to put it in sufficient fit condition to comply with the specifications and obtain acceptance by the city.

"(d) That plaintiff refused to correct, amend or rectify these defects and that defendant was obliged to ex-

pend large sums for materials, work and labor needful and necessary to put said material into form and condition for use as required by the plans and specifications, and in despite of repeated warnings and importunities refused to deliver the materials promptly, and greatly exceeded the limits of time for delivery, whereby defendant became entitled to demand liquidated damages as specified in the contract.

"Defendant files an itemized account of these various and sundry alleged breaches of the contract, showing the nature and cost thereof, which is marked "Exhibit Z," and asks that it be made and taken as a part of the answer, and accepted in lieu of a repetition of its recitals. This exhibit shows the amount of items and costs, the latter to the extent of $38,720.34, and asks judgment against plaintiff for that amount, together with interest thereon from the time of demand, which is alleged to have been made on April 16, 1908, and also for its costs. The defendant then denies generally each and every allegation of the petition.

"The answer of the Surety Company admits the incorporation of plaintiff and defendant and alleges: (1) that the Tank Company, at the time of filing the petition, had no legal capacity or license to bring or maintain this suit. (2) That plaintiff had no legal capacity or authority to bring or maintain this action. (3) That the Tank Company never had a license to do business in Missouri, and hence has no competency or capacity to maintain this action. (4) Except as admitted in the answer, it denies generally every allegation of the petition."

From the foregoing a fair conception of the issues may be gleaned. Other matters can best be stated in the course of the opinion, in connection with the points made.

I. In this case, whilst the parties seemingly consented to the appointment of a referee, it is a case where by reason of an extended account involved, the court could have compelled a reference under the statute (R. S. 1909, sec. 1996), and must be treated here as a compulsory reference. [Williams v. Railway, 153 Mo.

Reference.

487.] And in such cases the trial court is not bound by the findings of fact by the referee, but may review the evidence and make its own findings of fact. In the Williams case, supra, 153 Mo. l. c. 495, it was said:

"The reference in this case was by consent of both parties duly entered of record, but it was referable without the consent of either. The long and intricate account rendered it peculiarly proper for a reference. In a word, it was a case for a compulsory reference. In such cases it is the settled law of this court that the circuit court may on the motion of either party review the findings of the referee on the evidence reported and make its own findings and this court on appeal may review the findings and affirm or reverse the judgment of the circuit court in whole or in part. [R. S. 1889, sec. 2138; State ex. rel. v. Hurlstone, 92 Mo. l. c. 333; Wentzville Tobacco Co. v. Walker, 123 Mo. 671; Caruth-Byrnes Hardware Co. v. Wolter, 91 Mo. 484.] On this point of practice both parties are agreed."

It is seemingly agreed in this case that such is the settled practice. We mention the rule, however, in view of another which must be considered in the course of the opinion.

II. The pleadings here (petition and answer and counterclaim) evidence actions at law rather than in equity. The findings of fact by the trial court, if supported by any substantial evidence, are binding upon this court. In other words, we will not weigh conflicting evidence with the view of determining its weight, but will only review the evidence to determine whether or not there is substantial evidence in support of the trial judge's findings of fact. And in cases where the trial court has set aside the findings of the referee, and substituted findings of its own, the presumption of correct decision lies with the action of the court, rather than with the action of the referee. And in cases such as we have before us the substituted findings of fact by the trial court will only be reviewed by this court to the extent of determining whether or not they are supported by

*Review of Findings.*

substantial evidence. We will not weigh conflicting evidence in such instances. [Williams v. Ry. Co., 153 Mo. l. c. 511; State ex rel. v. People's Ice Co., 246 Mo. l. c. 202.] These two cases cover both divisions of this court. In the Williams case, supra, which was approved in the Ice Co. case, supra, it is said:

"The next finding of the referee which we must consider is one in favor of plaintiffs for $401.70 for 'close chopping' 13.39 acres. This finding of the referee the circuit court rejected, and of this action of the court plaintiffs complain. The amount is small in comparison to other claims, but a proper solution of the matter is attended with much difficulty. In this conflict between the circuit court and the referee the question arises, in whose favor is the presumption of correct decision?

"In Wentzville Tobacco Co. v. Walker, 123 Mo. 662, it was held that the presumption in this court was in favor of the judicial action of the circuit court whose duty and prerogative it was, in a case like this, to examine the report of the referee in the light of the evidence and affirm or reverse his action. That decision we think is in harmony with our practice in reviewing the granting or refusing of new trials. The presumption is in favor of the action of the trial court and it is only when we find that it has abused its discretion do we interfere with its judgment."

III. In references of the character involved here it has been held that the findings of the referee are in the nature of special verdicts, and have such status in this court upon review. [Berthold v. O'Hara, 121 Mo. l. c. 97, and cases cited.] This is on the theory that they have been approved by the court, and thus made, in fact and in law, the findings of the court. [State ex rel. v. People's Ice Co., 246 Mo. l. c. 210.]

Equivalent to Special Verdict.

The findings of the referee are wholly without vitality until the court acts. It requires the action of the court in sustaining them to give them, in this court, the status of special verdicts. In cases like the Berthold case, su-

271 Mo.—16

pra, and other similar cases, wherein the rule is announced, it will be found that the trial court sustained the findings of the referee. We of course are referring to references which are compulsory under the statute, and which involve actions at law. If such cases (actions at law) were tried by the court in the first instance, his findings of fact would have the weight of a verdict by a jury upon appeal here. In other words, they would not be ignored by this court, but would be binding upon this court, if there was any substantial evidence to support the findings of fact.

So we reach the conclusion in this case, that in so far as the referee's findings of fact have been sustained by the trial court they can not be set aside here, if there was substantial evidence to support them. We will not weigh conflicting evidence. It is not the referee's act which gives them that status here, but the act of the court in approving them. And when the trial court refused to approve such findings, and made findings of its own, such findings of the court have the same status here. We determine whether the court's findings have substantial evidence to support them, and if so they are binding here, and this court will not weigh contradictory evidence and judge the weight thereof.

IV.  By the foregoing rule we feel constrained to measure this record. There is, however, a preliminary matter which requires disposition at the threshold. By defendant's answer it is averred that relator was a foreign corporation doing business in Missouri without a license and for that reason could not bring or maintain a suit in our courts. [R. S. 1909, secs. 3037 to 3040, inclusive.]

Foreign Corporation Doing Business in Missouri.

As to whether relator was doing business in this State without license is a mixed question of law and fact. Of law, because it is the duty of the court to declare the legal effect of the written contract between relator and the Parker-Washington Company in determining the fact as to whether or not that contract called for doing of work in

Missouri in violation of our law.  Both the referee and the trial court found against the defendants upon this point.  Relator was furnishing to the Parker-Washington Company the iron pipe which was to be used by the Parker-Washington Company in the construction of the flow line.  The initial proceeding was by telegrams.  Parker-Washington wired relator asking if it would furnish the pipe at the price of $14.25 per lineal foot, and relator accepted at this price.  It would seem that the actual written contract was made in Missouri, or was signed by the president of relator, whilst in Missouri, then forwarded to the head office for the signature of relator's secretary and afterward signed by Parker-Washington Company through its proper officers.  By the contract the material to be used was to be manufactured in Ohio and delivered in Missouri, in condition to be placed in the flow line, so that it would stand the tests required by the contract between the city and Parker-Washington Company.  Relator had nothing to do with the placing of the pipes in the flow line.  Its material when in the flow line was to stand the required tests, but relator's liability ceased when it delivered on board the cars material which would meet the tests required by the city's contract, when such material had been properly placed in the flow line by Parker-Washington Company.  The contract fairly read does not place relator in the attitude of doing business in Missouri.  As a foreign corporation it had the right to contract to furnish from its factory manufactured material for use in Missouri, as the clothing manufacturer can contract to deliver his goods to Missouri customers.  The court properly found against defendants upon this point.  Relator was not doing business in Missouri within the sense of the statutes relied upon.  The facts of the case do not bring it within the case of Zinc Co. v. Mining Co., 221 Mo. 1. c. 12.  This relator had no place of business in Missouri, where, without license, it was transacting the business of its charter in Missouri, as was the fact in the Zinc Company case, supra.

V.  A second defense raises the point that the city has no right to bring and maintain this suit at the rela-

tion of Carroll-Porter Company. This question is deter-
mined by the face of the bond itself. The bond
Suit at Relation of City. provided that suit might be entered upon the
bond by the city at the instance of any material-
man, and should be instituted to the use of such
materialman. The case falls squarely within the ruling of
this court in City of St. Louis to use v. Von Phul, 133 Mo.
l. c. 565. The defense is without merit.

This and the foregoing defense are the only ones that
go to the whole case. Others go to parts thereof.

VI.  For the relator there is a question which touch-
es vitally the whole defense of counter-claim, and whilst
we are disposing of questions of that kind on one side it
is well to determine like questions on the other.
Acceptance.  The point made by relator is that the material
furnished by it was inspected and finally accepted by the
city at its factory in Ohio.

If this be true, then there would be little left to the
counter-claim. The point made was adversely ruled both
by the referee and the trial judge. Whilst the referee and
trial judge differed on the items of the counter-claim
which should be allowed, they did not differ upon this
question. They agreed upon the question that the tests
made at the factory in the course of manufacture did not
amount to a final test and acceptance of the material.

The city did have a man at the factory of relator to
watch the manufacture of the steel material going into
these pipes, and the contract provided for such an inspec-
tion, and also a test of strength. This man watched these
tests, as well as the material and its manufacture through-
out. But the trial court was right in holding that this
was not an acceptance of the material as it came from the
factory. The contract between the relator and the Par-
ker-Washington Company made the contract between the
city and Parker-Washington Company a part of the con-
tract, and under the latter-named contract the final pres-
sure test was to be made after the material had been
placed in the flow line, and the pressure test was to be
satisfactory to the Water Commissioner of the city of

St. Louis. In the contract between relator and Parker-Washington Company it is provided:

"The said second party guarantees and warrants that said pipe and appurtenances aforesaid so to be furnished shall stand every requirement and test of the Water Commissioner and be fully in accordance with the contract between said first party and the said city."

Elsewhere the city contract is by reference made a part of the relator's contract, and this city contract calls for the final pressure test, as above indicated. There was no error in overruling this contention of relator.

VII. The referee allowed on defendant's counter-claim $22,114.10, with interest to June 20, 1910, $2,880.16, or a total of $24,894.26, but in such allowance ignored and refused to allow an item of $10,275 based on the idea of $25 per day as liquidated damages for failure **Liquidated Damages.** to deliver the pipe within the eight months specified in the contract. The learned referee disallowed this claim of $10,275 as liquidated damages, and the court took a like view of this question. The referee held that, when all the facts and circumstances were considered (including all the contracts and the bond herein sued upon), it was clear that the parties intended to make this a penalty rather than liquidated damages. The contract between defendant and the city had a like provision, and the bond sued upon in this case was given to secure the faithful performance of that contract. That contract was made a part of plaintiff's contract. Under it the Water Commissioner, or his office, could make changes and thereby occasion delays. The city had the power to have inspectors at plaintiff's plant, and these could, and did in fact, occasion some delays. It is worth something to note that when delays began to appear defendant began to keep an accurate book account of the damages actually occasioned by such delays. This tends to show defendant's understanding of the contract. It tends further to show that under the contract the actual damages occasioned by delays could be readily determined. Further it should be noted, that although defendant was much longer

than twelve months in finishing its contract, the city settled without claiming any liquidated damages. We think that both the referee and the court gave to these contracts a fair construction, when they held that this clause therein created a penalty. This was defendant's first impression, because it at once began an account of actual damages occasioned by the delays. This account forms a part of its counter-claim herein, and on it some allowances have been made. The referee held that an allowance on this counter-claim for the damages suffered by these delays, would be what was intended by the parties in the execution of the contract. In other words, that the parties intended a penalty and not liquidated damages, and with this construction of the contract we are satisfied. There were too many opportunities for delays over which plaintiff had no control under the two contracts, to give the latter contract a different construction. The allowance of this so claimed liquidated damages was properly refused.

VIII. With this $10,275 claim out of the case the other matters herein are of easy solution. Other matters of exception go to questions turning upon disputed facts. Under the rule, which we have announced as applicable to this case, we are not permitted to disturb the findings of the trial court, unless such findings are unsupported by substantial evidence. These findings have the support of substantial evidence (a detail of which would serve no good purpose here) and for that reason we cannot disturb them.

From it all it appears that the judgment *nisi* should be affirmed. It is so ordered.

PER CURIAM.—The foregoing opinion by GRAVES, C. J., in Division, is adopted as the opinion of Court in Banc. All concur, except *Bond, J.,* who dissents in opinion filed; *Woodson, J.,* concurs in result.

BOND, J. (dissenting)—I dissent from the learned majority opinion because it inadvertently overlooks the essential and integral distinction between the scope of the view in cases of compulsory reference under our statute

and other cases which could not be referred except by the agreement of parties. The instant case was one in which a reference was compulsory under the strict letter of the statute, and that was recognized by both parties to the suit who conducted the trial on that theory in the court below. The section of the statute governing compulsory reference (R. S. 1909, sec. 1996) is of ancient date (R. S. 1845, p. 825, sec. 24; R. S. 1855, p. 199, foot note.) The rule that cases falling within the terms of the statute providing for compulsory reference are reviewable on appeal, like suits in equity, has been established in this State since the adoption of the statute in a continuous course of decisions. [State ex inf. v. Arkansas Lumber Co., 260 Mo. l. c. 274, and cases cited; Reed v. Young, 248 Mo. l. c. 613 et seq.; Sonnenfeld v. Rosenthal, 247 Mo. 250; State ex rel. v. Reynolds, 245 Mo. l. c. 703; Vandagrift v. Masonic Home, 242 Mo. l. c. 154; Utley v. Hill, 155 Mo. 232; Haas v. Garnett, 155 Mo. 568; Williams v. Santa Fe Ry. Co., 153 Mo. l. c. 495; Small v. Hatch, 151 Mo. l. c. 306; Shepard v. Bank, 15 Mo. 144; Edwardson v. Garnhart, 56 Mo. 81; Ice Co. v. Tamm, 138 Mo. 385; Roth v. Wire Co., 94 Mo. App. l. c. 268; Bond v. Finley, 74 Mo. App. 22; Craig v. McNichols Furn. Co., 187 S. W. (Mo. App.) l. c. 796, and cases cited.]

I do not understand it to be disputed by counsel that the record of the long account and array of items of charge on both sides, contained in this record, presented a case falling strictly within the terms of the statute providing for the compelling of references, and I am, therefore, unable to perceive any logical or legal ground taking this case outside of the application of the statute as declared by the appellate courts of this State in the decisions above cited, and hence I am constrained to dissent from the views expressed in the learned majority opinion.