SANDWICH MANUFACTURING COMPANY v. MORD M. BOGIE, Administrator of Estate of MILTON H. LOSEE, Appellant.—298. S. W. 56.

Division One, July 30, 1927.

1. **LIMITATIONS: Demand against Estate: Amended Statement: Change of Cause.** If the amended statement of a claim, filed in the circuit court after the expiration of the statutory period for filing demands against a decedent's estate, is a shifting of the cause of action timely filed in the probate court, and is in fact a departure and sets up a new and different cause of action, it is barred by limitations, and if such departure and bar are properly raised, a judgment in favor of the claimant cannot stand.

2. **ACTION ON ACCOUNT: Demand against Estate: Accounting: Law Action.** A demand against decedent's estate, which states the relationship between the claimant and decedent, and sets forth facts which show that the claimant is entitled to an accounting and states that no accounting has been made, and prays for a money judgment for the amount found to be due, contemplates an accounting. A demand filed in the probate court which states that decedent was the agent and manager of claimant's business; that as such, he handled the moneys, notes and accounts of claimant, and sold the merchandise which claimant carried for sale, and collected money for such sales, and appropriated the money to his own use, and was therefore indebted to claimant at the time of his death in a named amount, and prays for judgment for said amount, is a statement of the old common-law action of account, and is an action at law, both under the common law and under the statutes, and being an action at law is triable on the law side of the court.

3. ———: **Triable as Action at Law: Referee.** The distinction between common-law and equitable actions is still recognized by the various practice acts, although the number of actions has been greatly reduced. An action of account, the items of which are legal as distinguished from equitable, is to be tried on the law side of the court, by (a) the court without a jury, under named circumstances, or (b) by a jury, or (c) by a referee where the demand involves long accounts made up of various items purely legal in character.

4. ——: **Departure.** The fact that the stated demand filed in the probate court was an action at law, and that the amended petition filed in the circuit court was also a statement of an action at law, does not necessarily make the amended petition the same cause of action.

5. ——: ——: **Limitations.** Where the demand filed in the probate court stated that decedent, as the agent and manager of claimant's business, sold its merchandise and appropriated money collected to his own use, and contemplated an investigation of the accounts during the whole period of decedent's agency, which was thirty years, and stated that the amount appropriated by him was a named sum and demanded judgment for the amount, and the amended petition filed in the circuit court covered only two and a half years of the period, and limited the investigation to 130 items of the account, and did not contemplate a general accounting, but stated that the amount due claimant on these 130 items was a named sum, the amended petition was a departure, and was a shifting of the cause of action stated in the demand filed in the probate court; and particularly so, where the demand in the amended petition bases claimant's right to recover upon the decedent's failure of duty to report the amounts collected on the 130 items, which were allegations not stated in the original demand. And the ruling must be the same whether the amended petition stated the 130 items with particularity or generally, for claimant cannot take advantage of his own defective pleading. And the amended petition having been filed more than a year after notice to creditors had been given, and being a departure from the original cause of action, the demand made by it is barred by limitations.

---

Corpus Juris-Cyc. References: **Accounts and Accounting,** 1 C. J., Section 11, p. 602, n. 83; Section 12, p. 603, n. 2; Section 29, p. 608, n. 80, 81. **Actions,** 1 C. J., Section 176, p. 1047, n. 97. **Executors and Administrators,** 24 C. J., Section 986, p. 351, n. 87; Section 1141, p. 414, n. 10.

Appeal from Jackson Circuit Court.—*Hon. Samuel A. Dew,* Judge.

Reversed.

*Frank P. Sebree* and *Sam B. Sebree* for appellant.

(1) The action was not for an accounting, but for specific items of alleged indebtedness. (2) Said items are not within the claims made by the plaintiff in the original or the amended demand and said items, and each of them, were barred by the statute of limitations. (3) Said item in said paragraph three of the amended demand is a new and different claim from the cause of action set forth in the original demand and is barred by the statute of limitations relating to demands against the estates of deceased persons. The original demand of the claimant was for money of the claimant alleged to have been collected and used by the deceased for his own personal use without the consent of the claimant, while the cause of action set forth in the third paragraph of the amended demand of the claimant and the evidence upon which the finding of the referee and the finding and judgment of the court are based entirely relates to the value of the twine purchased by said Losee as agent of the plaintiff and not

found on hand at the death of the said Losee, and there was no evidence in the case proving or tending to prove that the said amount was money collected by said Losee, or, converted to his own use.

*Bowersock, Fizzell & Rhodes* for respondent.

(1) It is the duty of an agent to keep his principal's funds separate; if he does not do so, it is presumed that the whole fund is that of the principal. 2 C. J. 741, sec. 407. (2) The burden is upon him to show what part is his. National Bank v. Ins. Co., 104 U. S. 67; Atkinson v. Ward, 2 S. W. 80; Ill. Linen Co. v. Hough, 91 Ill. 63. (3) The burden of proving the credits claimed by him is on the agent. Young v. Powell, 87 Mo. 128; Quirk v. Quirk, 155 Fed. 205; Ill. Linen Co. v. Hough, 91 Ill. 69; Farmers Warehouse Co. v. Montgomery, 99 N. W. 777; Little v. Phipps, 94 N. E. 261; McCulloch v. Tomkins, 49 Atl. 476; Dodge v. Hatchett, 45 S. E. 668. (4) The report of a referee, confirmed by the trial court, will not be disturbed if there is substantial evidence to sustain it. Williams v. Ry. Co., 153 Mo. 489.

GRAVES, P. J.—In the statement of counsel for the appellant much is said about there being a difference between the cause of action filed in the probate court, and the cause of action stated in an amended statement filed after appeal to the circuit court. In this connection it is said that the sundry items, shown by the evidence, in proving the amended statement of the cause of action, are barred under the statutes. We do not find this claim as to the statute of limitations fully briefed, but that we may have the full case before us, both pleadings will be given.

The original statement filed in the probate court reads:

"ORIGINAL DEMAND AGAINST ESTATE. Comes now the Sandwich Manufacturing Company and states that it is a corporation organized and existing under and by virtue of the Laws of the State of Illinois, with its principal office and place of business in Sandwich, Illinois; that it has qualified to do business in the State of Missouri, and has for many years maintained a branch office in Kansas City, Missouri; that Milton H. Losee, deceased, was for many years prior to his death the agent for the company at Kansas City, Missouri, and manager of said branch office; that said Milton H. Losee died on the 27th day of October, 1915, and thereafter his will was duly admitted to probate in this court, and Charles R. Pence is now the duly appointed, qualified and acting administrator with the will annexed of said estate; that as such agent and local manager said Milton H. Losee had at all times in his possession and under his control funds of the company and collected from time to time sums of money due said com-

pany; that without authority from the company and without its knowledge or consent said Milton H. Losee used funds of the company under his control for his own personal uses and transactions, and failed to report or in any way account to the company for the collection and receipt of large sums of money belonging to it; that the company did not discover until after the death of said Milton H. Losee the fact that he had used funds of the company for his own personal uses and transactions and had failed to report or account for moneys collected and received by him for the company; that by reason of having used funds belonging to said Sandwich Manufacturing Company without its authority, knowledge or consent for his own personal uses and transactions as aforesaid, said Milton H. Losee was at the time of his death and his estate still is indebted to said company in the sum of $30,465.45.

"Wherefore, your petitioner asks that its claim be allowed against the estate of said deceased for the sum of $30,465.45."

The amended demand thus reads:

"AMENDED DEMAND AGAINST ESTATE.   Comes now the Sandwich Manufacturing Company and states:

"1.   That it is a corporation organized and existing under and by virtue of the laws of the State of Illinois with its principal office and place of business in Sandwich, Illinois; that it has qualified to do business in the State of Missouri, and has for many years maintained a branch office in Kansas City, Missouri; that Milton H. Losee, deceased, was for many years prior to his death the agent of the company at Kansas City, Missouri, and manager of said branch office; that said Milton H. Losee died on the 27th day of October, 1915, and thereafter his will was duly admitted to probate in this court and Henry L. Jost is now the duly appointed, qualified and acting administrator with the will annexed of said estate, having succeeded Charles L. Pence as such since the filing of the original claim herein.

"2.   That as such agent and local manager, said Milton H. Losee had at all times in his possession and under his control funds of the company, and collected from time to time sums of money due to said company, for all of which funds and money said Losee was as such agent and manager bound to account to said company; that between the 15th day of April, 1913, and the date of his death, said Losee, among many other transactions as agent and manager, collected on behalf of the company various sums of money, being more than one hundred and thirty items and totaling $29,203.03; that said collections were made for merchandise of the company sold by said Losee as its agent, in part on open accounts representing debts due the company for such merchandise, in part on notes given by customers to the company for such merchandise, and in part on accounts repre-

senting goods of the company consigned by him as its agent; that such sales and consignments and notes represented by said items of collection (but not the collections themselves) appear in the various ledgers, note registers, invoice books, cash books, report books and statement books of the company kept by said Losee, or under his direction, each of the separate transactions being entered in its different aspects in all or a large number of said various books and records; that none of said collections were entered upon the books of the company kept by said Losee or under his direction, except upon the bank books showing the accounts in the name of the company hereinafter referred to, and that no report or account whatever was made or rendered by said Losee to said company covering said collections; that said collections were deposited by said Losee in the bank accounts of said company, but no report of any kind was made to said company, thereof; that said Losee from time to time, without the knowledge or consent of said company, drew moneys from said bank accounts and disbursed the same for his own personal uses and transactions, with the result that no accounting of said items so collected was ever made to said company; that said Losee and his estate has been and is now indebted to the company by reason of the matters set forth in this paragraph in an amount exceeding $29,203.03.

"3. That in February, March and May, 1915, said Losee bought, in the name and upon the credit of the company, 250,000 pounds of twine; of such amount, the purchase of 90,000 pounds, 64,450 pounds were sold by said Losee on behalf of the company and the sales reported to it and duly accounted for; 25,550 pounds remained on hand at the date of his death. That the balance of said purchases, to-wit, 160,000 pounds, was not reported to said company, but was made without its knowledge or consent and it did not learn thereof until after the death of said Losee, whereupon it was obliged to and did pay for the same in full; that of said 160,000 pounds of twine there was on hand at the time of his death 51,850 pounds which was accepted by the company; that the remaining 108,150 pounds were sold by said Losee to various persons and collections made by him without any account being rendered by him to the company either of said sales or said collections; that certain of said sales were not collected by said Losee, but were represented by accounts receivable at the time of his death, which accounts were accepted by the company; that said Losee is entitled to credit in his accounting with the company for the amount of these accounts, but that after the allowance of said credit, said Losee and his estate has been and is now indebted to the company by reason of the matters set forth in this paragraph in an amount exceeding $3,363.57.

"4. That during the year 1915, said Losee failed to report or in any way account to the company for various other collections of and

transactions in the funds of the company, and used for his own personal benefit, without the knowledge or consent of the company, certain of its funds, in addition to those hereinbefore specified, amounting to $972.19, for which no accounting was ever made to said company; that said Losee and his estate has been and is now indebted to the company by reason of the matters set forth in this paragraph in the amount of $972.19.

"5.   That the estate of said Losee claims to be entitled to various credits in said accounting, the exact nature and amount of which are unknown to the claimant; that no such credits are valid or should be allowed except credits to the amount of $2,972.73, which claimant admits; that there are no further payments or offsets to which said Losee or said estate is entitled on said claim, but that said Losee was at the time of his death and the estate still is indebted to claimant by reason of the premises in the full sum of $30,465.45, none of which has been at any time paid to claimant.

"Wherefore, claimant asks that its claim upon the accounting aforesaid be allowed against the estate of said deceased for the sum of $30,465.45."

Pleadings and proof can best be stated together.   Before the amended statement was filed in the circuit court, but after appeal from the probate court to the circuit court, the claimant filed a motion for the appointment of a referee to hear the cause, because "the issues will entail the examination of invoice books, note registers, cash books, report books, statement books, check books and pass books, and will involve upwards of 130 separate transactions appearing in many hundreds of entries, and the identification and tracing of all of said transactions through all of said books and records."

This motion was overruled, and thereafter followed the amended statement, and such amended statement followed by a second motion for reference.   This motion was sustained, and a referee appointed. We give the motion in full, as its language may show claimant's conception of its own case.   This motion reads:

"Claimant states that the trial of each and every issue of fact herein will require the examination of a long and complicated account; that said claim is based on the failure of deceased to account for collections made and moneys handled by him for claimant during a period of two and one-half years, during which deceased acted as claimant's agent in charge of its business in Kansas City, Missouri; that the evidence, consisting largely of books and records, covers sales by deceased on behalf of claimant, the receipt of notes in payment for various of said sales, the collection of said notes and obligations, and the failure of deceased to account to claimant therefor; that the issues will entail the examination of invoice books, note registers, cash books, report books, statement books, check books, and

317 Mo. Sup.—62.

pass books, and will involve upwards of 130 separate transactions appearing in many hundreds of entries, and the identification and tracing of all of said transactions through all of said books and records.''

After a hearing the referee made his findings, and among other things he found (1) that the amended claim was but a more detailed statement of the same claim made originally in the probate court and hence the statute of limitations had not run, or barred the claim; (2) that under paragraph 2 of the amended claim the claimant was entitled to recover $29,033.18; (3) that under paragraph 3 of the amended claim the claimant was entitled to receive $3,639.39, and (4) that under paragraph 4 of the amended claim, the claimant was entitled to recover $822.19. Judgment was recommended for these sums, less a credit spoken of in paragraph 5 of the amended statement of demand. That we may be exact, we give the conclusions of the referee in full, thus:

''CONCLUSION. The referee finds the estate chargeable as follows:

''Amount collected and not reported or remitted between April 15, 1913, and October 27, 1915..............$29,033.18

''Value of twine not accounted for, after allowance of credits for twine accounts collected by the company..  3,643.45

''Note of Miss Zane paid by company    100.00

''Interest on deposits .............    503.84

''Personal checks ..................     85.28

''Tickets in cash drawer ...........    133.07

''And the estate is entitled to credits as follows:

''Amount allowed in demand .......                    $2,972.73

$33,498.82   $2,972.73
2,972.73

''Balance for which judgment against the estate is recommended........$30,526.09

''Respectfully submitted,
''GEORGE H. ENGLISH, Referee.''

To the report of the referee elaborate and extended exceptions were filed, calling attention to all the actions of the referee to which the estate excepted, but these were overruled, and judgment entered as per the recommendations of the referee. All points were and are duly saved in a motion for new trial, which motion was likewise overruled, and exceptions saved. That the motion is full and complete is made apparent by the fact that it contains fifty-four grounds. Mo-

tion in arrest of judgment was likewise filed and overruled, and exceptions duly saved.

It appears that Milton H. Losee, deceased, started with claimant as an employee in its factory at Sandwich, Illinois, but for more than thirty years was the manager of its branch office in Kansas City, Missouri. During all those years no suspicions of defalcations upon the part of Losee were entertained. He seems to have been held in the highest esteem by the officers of the claimant during all those years. Upon Losee's death, claimant took possession of all the books and papers in the Kansas City office, and shortly thereafter this claim was filed and prosecuted. The report of the referee shows the esteem in which Losee was held by his employer's officers during all the years, and likewise tends to show that all matters involved in this suit could have been ascertained at any time by the claimant by the examination of the books, papers, and cards, openly kept in the office at Kansas City. But of this more fully, infra. Claimant's business was the manufacture of various implements and selling the same. Sales were usually on credit. Details will be given in the opinion.

I. The record shows the date of the granting of letters of administration. It likewise shows the publication of notice to creditors, so **Difference in Statements.** that it is clear that if the amended statement of claim is a different one from the original claim, such amended statement of claim was filed too late. This point is not contested. Claimant maintains that it is the same claim, more specifically pleaded, and hence there is no bar to the action. Of the amended demand the referee says:

"The referee, after careful comparison of the original demand with the amended demand, is of the opinion that said amended demand is merely an amplification of the general averments of the original demand, and that there is no departure either from the allegations or from the theory of the original demand in the amended demand. In the opinion of the referee, the original demand made the essential allegations that the deceased Losee, having in his possession and control funds of the claimant, had failed to account for or pay over such funds. The amended demand merely specifies the particular character of the items and funds thus claimed not to have been paid to the claimant. *The point is not made that the amended demand is insufficient in detail.*

"It is, therefore, the opinion of the referee, and he so finds, that the amended demand is no departure from the original demand and does not set up a new cause of action and, in consequence, that the demands set forth therein are not barred by the statute of limitations, which was tolled by the exhibition, within due time, of the original demand."

The referee also says of the original demand:

"Examination of the original demand fails to disclose to the referee any of the essential features of a bill in equity for an accounting, but, on the contrary, it is the opinion of the referee that said claim constitutes a demand on an indebtedness for money alleged to have been received by the deceased, Milton H. Losee, belonging to the claimant and alleged not to have been paid by said deceased to the claimant for which judgment is demanded. This, in my opinion, constitutes a mere action at law for the recovery of an indebtedness, notwithstanding the informality of the demand and its failure to specify the different items, and notwithstanding the number of the items covered by the evidence."

Whether or not there was a shifting of causes of action in the circuit court by the filing of the amended statement, we leave for another paragraph. If there was, the action tried was barred because it was the claim filed in circuit court (as an amended claim) that was tried, and upon which, after trial, the judgment entered. The amended claim was filed long after the time for filing claims had expired.

That there are some very marked differences between the two statements (the one filed in probate court and the one filed in circuit court) there can be no question. The original claim clearly covers the whole period of Losee's service as manager of the Kansas City branch of the Sandwich Manufacturing Company, whereas the amended claim only covers about two and one-half years of that time. The original claim contemplated an investigation of accounts for the whole time, in order to determine whether or not claimant was right in saying that Losee's estate owed it $30,465.45. The amended claim only contemplates an investigation of some 130 items of account in the period of about two and one-half years. The original claim says that Losee at all times had in his possession and control funds of this claimant, and collected from *time to time* amounts of money due claimant, and failed to report and account for the large sum of money so collected, but without the knowledge of claimant the funds under his control and by him collected, were by him used for his own personal uses and transactions, and "that by reason of having used funds belonging to said Sandwich Manufacturing Company without its authority, knowledge or consent for his own personal uses and transactions as aforesaid, said Milton H. Losee was at the time of his death and his estate still is indebted to said company in the sum of $30,465.45."

This original claim says nothing about the number of misappropriations of funds, nor the dates of such misappropriations. The amended claim says that there were about 130 misappropriations during a named period, i. e. from the 15th day of April, 1913, to the date of Losee's death, which was October 27, 1915. It also says that Losee

collected money on accounts and notes (some 130 items in number) and deposited his collections on these items to claimant's credit in its bank accounts (two bank accounts were kept) at Kansas City, Missouri, and thereafter used money belonging to claimant for his own uses, and transactions, and failed to report either said collections, deposited as aforesaid, or Losee's withdrawal of the funds (for his own use and benefit) to the claimant.

It is true that the amended claim does not name the 130 specific items collected, and not reported. The evidence, however, shows them. In this regard it may be a defectively stated cause of action. But of this later.

Just what effect these differences, and perhaps others, between the two claims have upon what name should be given them we leave for discussion when we come to discuss the alleged change in the cause of action, and the referee's ruling thereon. As the determination of that question might determine the whole case, we take it up next.

II. It is clear to our mind that the original claim filed in the probate court contemplated an accounting, and a judgment for what might be found due claimant upon such accounting. It is alleged

**Action at Law.** that there is due the sum of $30,465.45. The petition is perhaps not as accurately drawn as would be one in the old common-law action of account, but it contains the essential elements of it. [Hughes v. Woolsey, 15 Mo. 492; 1 C. J. sec. 11, p. 602, and sec. 29, p. 608.] In 1 Corpus Juris, supra, the essentials are thus stated:

"The declaration in the action of account is in form somewhat like a bill in equity for an accounting; but, unlike such bill, it does not ask that an account be taken, but concludes as all declarations at law, demanding damages. It should set forth enough to show that plaintiff is entitled to both the judgments which are incident to such an action, namely, judgment that defendant do account, and judgment, after the account, for the balance found due; and defendant should be charged in the particular character in which he is liable. In Pennsylvania it has been held that a declaration is not indispensable, where the case is submitted by consent to reference, as the writ conveys sufficient notice of the nature of plaintiff's demand."

Judge SCOTT, who was an authority upon the common law, in the Hughes case, supra, gives the same essentials for the pleadings. A relationship of the parties and a state of facts should be shown that would entitle the claimant to an accounting, and that no accounting has been made, with prayer for a money judgment for the amount found due.

Such was the common-law action of account, and it was an action at law. [1 R. C. L. sec. 23, p. 222; 1 C. J. sec. 11, p. 602 et seq.]

The relationship disclosed is that of agent and manager of a business—a branch office of the claimant at Kansas City. As such agent and manager Losee not only handled the moneys, notes and accounts of the claimant, but merchandise which claimant carried for sale, and which Losee (working on a fixed salary) sold for claimant, and collected on such sales. The facts pleaded in the original claim bring it within the old common-law action of account. This was, as said, a common-law action, so the referee is right in calling it an action at law. Our practice act has left us a more limited number of actions, and trials are had of each in the same court, but the distinction between common-law and equitable actions are recognized as before. In fact, our several practice acts have placed accounts (the items of which are legal as distinguished from equitable) on the law side of our courts, there to be tried, (1) by the court without a jury, under named circumstances, (2) to be tried by a jury, or (3) to be tried by a referee. [Johnston v. Star Bucket Pump Co., 274 Mo. l. c. 424; Roloson v. Riggs, 274 Mo. 522; State ex rel. v. Wilson, 288 Mo. l. c. 329-331; Kline Cloak & Suit Co. v. Morris, 293 Mo. l. c. 494; Kelcher v. Johnson, 206 S. W. l. c. 266; Carroll-Porter Boiler & Tank Co. v. Parker-Washington Co., 271 Mo. 229.] The latter case followed, and somewhat elaborated upon, State ex rel. v. People's Ice Co., 246 Mo. l. c. 202.

The sum and substance of all these cases is that cases involving long accounts, made up of items purely legal in character, are actions at law. So we again say that the referee was right in saying that the claim filed in the probate court was an action at law, and this under either the common law, or under our statutes. The amended claim is also said to be an action at law, and it may be such, but this does not necessarily make it the same cause of action. We can only determine its character by an analysis of the petition or statement of the claim. This we shall attempt. We say "attempt" because the statement is not at all clear and pointed. If it stood for a prize in a clarity contest, it would never carry off the blue ribbon.

**Departure: Limitations.**

The learned referee seemed to recognize that it was defective in not setting out the 130 items, plead in general terms, but he says no point was made of this defect. Paragraph 2 of the petition or claim covers the larger amount entering into this judgment, and we shall take it first. The first clause avers that Losee as agent and manager of plaintiff, had at all times, under his control funds of the company, and collected from time to time sums of money due to claimant, for all of which (money under his control and money collected) he (Losee) was bound to account to claimant. If the petition stopped here we would have no trouble. It would state the same cause of action stated in the original claim. This is the first clause of para-

graph 2 of the claim and closes with a semicolon.  This clause is followed up thus: "that between the 15th day of April, 1913, and date of his death, said Losee, among many other transactions as agent and manager, collected on behalf of the company various sums of money, being more than one hundred and thirty items and totaling $29,203.03; that said collections were made for merchandise of the company sold by said Losee as its agent, in part on open accounts representing debts due the company for such merchandise, in part on notes given by customers to the company for such merchandise, and in part on accounts representing goods of the company consigned by him as its agent; that such sales and consignments and notes represented by said items of collection (but not the collections themselves) appear in the various ledgers, note registers, invoice books, cash books, report books and statement books of the company kept by said Losee, or under his direction, each of the separate transactions being entered in its different aspects in all or a large number of said various books and records; that none of said collections were entered upon the books of the company kept by said Losee or under his direction, except upon the bank books showing the accounts in the name of the company hereinafter referred to, and that no report or account whatever was made or rendered by said Losee to said company covering said collections; that said collections were deposited by said Losee in the bank accounts of said company, but no report of any kind was made to said company thereof; that said Losee from time to time, without the knowledge or consent of said company, drew moneys from said bank accounts and disbursed the same for his own personal uses and transactions, with the result that no accounting of said items so collected was ever made to said company; that said Losee and his estate has been and is now indebted to the company by reason of the matters set forth in this paragraph in an amount exceeding $29,- 203.03."  This rather intricate and mixed portion of the petition says: (1) that between April 1, 1913, and the death of Losee (averred in the petition to be on October 27, 1915), Losee, as agent and manager, among many other transactions, collected for the company more than 130 items totaling $29,203.03; (2) that said collections were (these 130 items or more) for merchandise of claimant sold by Losee as its agent in part on open accounts, in part by notes given for merchandise sold, "and in part on accounts representing goods of the company (claimant) consigned by him as its agent;" (3) that the sales, consignments and notes represented by said items of collection, but not the collections themselves, appear in sundry named books of the company, said divers books being kept by Losee; (4) that none of said collections (these 130 or more items) were entered in or upon any of the books of the company kept by Losee, *except upon the bank books showing the accounts in the name of the company;* (5)

that no reports or accounts of such collections were made to the company, but that such collections were in fact put into the company's bank accounts to its credit, but no report of that fact was made to the company; (6) that Losee from time to time drew money from these bank accounts (there were two of them) without the knowledge or consent of claimant, and for his own personal use and transactions, "with the result that no accounting of said items so collected was ever made to said company;" and (7), that by reason of the matters set forth in said paragraph 2 "said Losee and his estate has been and is now indebted to the company" in the sum of $29,203.03.

It is clear that these statements made in the amended claim do not contemplate a general accounting between principal and agent. The original claim did contemplate an accounting of all moneyed transactions between them, and the ascertainment of the true status of account, claimed by claimant to be $30,465.45 in its favor. A peculiar feature of paragraph 2 of the amended claim is that it limits the investigation to a period from April 15, 1913, to October 27, 1915, and tries to limit it to 130 items of account, described generally, but not particularly. The evidence discloses these 130 items, described in general terms, and in character they are of the kind described in the general terms. That is to say, they come from the sources as set out in the amended claim.

Upon motion claimant could have been made to set out in terms and particulars these 130 items. But this defect of statement does not change the character of the claim. The character must be judged by the statement if it had been correctly made. In other words, it must be judged as if these 130 items were stated in detail, as they are in the evidence upon which the judgment is entered. Claimant cannot take advantage of its own fault in not setting out these items, that it described generally. The case was tried (so far as the claim in paragraph 2 is concerned) on the theory that the measure of the recovery was the sum of these 130 items. This is the construction placed upon its petition (paragraph 2) by claimant as indicated by the whole trial. In other words, the trial was to establish the sum of these 130 items, just as if they had been specifically pleaded. This sum was shown, and judgment rendered for it.

So, as we view the case from one angle, the action in the amended claim is one at law for the recovery of an amount equal to the aggregate of those 130 items, but this does not make it the same legal action, as that stated in the original claim. It must be borne in mind that books were kept at the home office at Sandwich, Illinois, which would have to be considered in an actual accounting between the parties, because those books cover some matters of account between them not kept in the branch office books. The original claim was one for a complete accounting, and a judgment for the amount found due. It

was not a suit upon particular items. The amended claim (from one angle and from one viewpoint) is an action to recover these particular, individual items. The claim says, "with the result that *no accounting of said items so collected was ever made to said company.*" This strongly tends to show that the recovery was sought upon these items only, and the judgment as a fact was for the total of these items. The same proof would not sustain both claims. The amended claim, on this theory or angle of the case, was filed out of time, and the 130 items claimed is barred. [R. S. 1919, secs. 74 and 182.]

From another angle or viewpoint this paragraph 2 of the amended claim would seem to bottom plaintiff's right of recovery upon the fact of Losee's neglect of duty in not reporting these 129 or 130 collections (items sued for in this amended claim) to claimant. The evidence discloses that Losee made weekly reports and from this it may be assumed that he was obligated to so do. We say that from this one angle of the claim it would seem that the right to recover was bottomed on this neglect of duty, for Losee never reported these items in the weekly reports. This we say, because the amended claim says that these items were collected, and were placed to claimant's credit, in the bank accounts of claimant in Kansas City, but that Losee checked out from these bank accounts money for his own uses and transactions (without knowledge or consent of claimant), and thus by Losee's failure to report the collections, claimant had no accounting of the items, and lost them. These are fair deductions from this very indefinite pleading, but *this* is not the *same cause of action* stated in the original claim. The referee says the amended claim is but an elaboration of the original claim. As a fact it very much limited the scope of the claim first filed, from any angle from which you view paragraph two of the amended claim.

We conclude that this second paragraph is an action to recover for some 129 or 130 particular items collected by Losee, and not reported to claimant, or if not, then it is an action to recover the aggregate of these collections because of the neglect of Losee to report the collections, by reason of which neglect the claimant lost the items. In either event there *has* been a change in the cause of action, and this amended claim having been filed more than a year after notice to creditors had been given it is and was barred. So too, paragraphs 3 and 4 are actions to recover for specific items, and fall within the same category as the claims in paragraph 2.

We reiterate as to the action covered by paragraph two of the amended claim. It does not contemplate an accounting as is contemplated by the original claim, but throughout the measure of recovery sought is the aggregate of these 129 or 130 specific collections. Either item could have been sued for and collected without an accounting, and the 129 or 130 can likewise be sued for and collected without an

accounting. For some reason the claimant by the amended claim seems to have been dodging a complete accounting. It appears in the evidence that claimant would borrow money upon notes which it gave to its two banks in Kansas City, in $5,000 and $10,000 amounts, and the cash would go direct to Sandwich, Illinois. But when these notes were about to come due, Losee was directed to care for them out of money at Kansas City. The twine business is a complicated affair. In the wind-up it is claimed that Losee was denied recovery for what he paid out for twine, but charged with all that he sold, or should have had on hand. But this is adrift, with the views we have expressed above. A very pretty question grows out of the fact that claimant admits that these 129 or 130 items went to its credit in the two Kansas City banks, and the status of the bank accounts, the collections and disbursements during the two and one-half years covered by this amended claim. But with the views we have above expressed a discussion would be but *obiter*, although it demonstrated the error of the present judgment.

In accordance with our views as to a change of the cause of action, and the statute of limitations as to the time in which claims should be filed, after publication of notice, this judgment is simply reversed. All concur.