SUSIE BENTLEY ET AL., RESPONDENTS, v. HELEN HURLEY, APPELLANT.[*]

Kansas City Court of Appeals. November 7, 1927.

52

*Corpus Juris-Cyc. References: Associations, 5CJ, section 4, p. 1334, n. 29, 33; p. 1335, n. 37; section 50, p. 1348, n. 27; section 86, p. 1359, n. 57; section 87, p. 1360, n. 65; section 102, p. 1365, n. 51; Replevin, 34Cyc, p. 1520, n. 69; Trial, 38Cyc, p. 1632, n. 10; p. 1787, n. 98; Trover and Conversion, 38Cyc, p. 2108, n. 60.

*Frazier & Mullins* and *James F. Gore* for respondent.

*W. R. Littell* and *A. M. Tibbels* for appellant.

BLAND, J.—This is an action in two counts; the first for the conversion of the sum of $89.23 in money and the second to replevy certain books and records of the Ladies Center Grove Cemetery Association, a voluntary association of which plaintiffs are members. There was a verdict and judgment in favor of plaintiff on both counts. The defendant has appealed.

No witness was introduced on behalf of defendant. The facts as shown by plaintiffs' witnesses are as follows: The Ladies Center Grove Cemetery Association is a voluntary association organized for the purpose of improving and beautifying the Center Grove Cemetery located in Atchison county. Its funds are raised by an annual membership dues of twenty-five cents per member and the proceeds of a dinner held on Decoration Day of each year upon a tract of ground owned by the association at the cemetery. The association had been in existence about twenty-four years at the time this controversy arose and had operated under a written constitution and certain usages and practices. The constitution, which is the only written law of the society, provides that the officers of the association shall be a president, two vice-presidents, a secretary and a treasurer, whose duties shall be "such as usually devolve upon those officers;" that the association should meet once a month and any woman might become a member by consenting to the constitution and contributing twenty-five cents. No provision is made as to the terms of the officers

or for their removal, but under a practice of the association officers were elected in September to take office on the 15th day of the following April and held their positions for a period of one year. Defendant, in September, 1924, was duly and regularly elected to the office of treasurer of the association, taking office on April 15, 1925. At the latter time the sum of $87.48 was turned over to her by her predecessor in office, together with the books and records pertaining to the office of treasurer, mentioned in the second count of the petition. Defendant has never resigned her office in the association nor, in fact, formally withdrawn as a member and her dues are paid up. The answer pleads that she is still treasurer of the association.

Some disagreement arose between the members of the association, the exact nature of which is not disclosed in the record. It would appear that trouble started to brew shortly after defendant was elected treasurer, for at that time her husband sought to have the president-elect (although she did not take office until the following April) call a meeting of the association for the purpose of forming a new society, telling her that she was then president with authority to act in the premises. This the president-elect refused to do. Although owned by the original association, or The *Ladies* Center Grove Cemetery Association, the title to the tract of land at the cemetery and the bank account of the association were in the name of the Center Grove *Ladies* Cemetery Association. It would appear that the instigators of the move to organize the new association seized upon this circumstance to claim ownership of the bank account and land by organizing an association known as the Center Grove *Ladies* Cemetery Association, which was formed shortly after April 15, 1925, with a different president and secretary from that of the old society. (It will be noted that the difference in the names of the two associations is that in the original association the word "Ladies" appears before the words "Center Grove".) The new society was organized with Mrs. Amick as president, Mrs. Lottie Sharp as secretary and defendant as treasurer. It would appear that all of the officers of the new association were members of the old.

In June, 1925, the original society had a "call" meeting on its grounds at the cemetery, at which meeting it was ordered that "all bills be paid by written order to the treasurer, signed by the secretary and president," etc. It seems to have been the practice even prior to this time for the bills to be paid in this manner. In May, 1925, one Forest McGinnis did some work at the cemetery for the original association and received an order on the defendant, signed by the president and secretary, to pay him for the work performed by him. Defendant refused to honor this order or to pay the money, and, on or about May 11, wrote McGinnis as follows:

"Please send an itemized statement of labor done by you at Center

Grove Cemetery to Mrs. John Amick the President of Center Grove Ladies Cemetery Association and I will send you check for same.

"HELEN HURLEY, Tr."

Mrs. Gage, a sister of the defendant, was a charter member of the old association and president of the "work committee" of that association, in which capacity she hired workmen to perform services at the cemetery. She testified that defendant was also a member of her committee and that she asked her shortly before May 16, 1925, to meet with the committee to hire workmen but that defendant refused to do so, giving no reason therefor, but on or about May 16, 1925, she received the following letter from the defendant:

"Dear Sister: As you called me up I will make you a little more thorough explanation in regard to what you wanted to know. In the first place *I wish to make it plain that I am the Treasurer of Center Grove Ladies Cm. Assn.* and expect to hold the office and fulfill the duties pertaining thereto. In the second place the location is Center Grove, the Center Grove Ladies' Cem. Ass'n will hold their meetings there not Westboro or any other place but Center Grove as *in accordance with the old original by-laws.* In the third place *all equipments* are there belong there and *will be used there also the money was raised there and will be used by the Center Grove Ladies' Cem. Ass'n* for the purpose for which it was raised only and *will not be turned over to an incorporation* as an endowment fund to be controlled by any town *nor will it be paid out for pledges which are not legal.* We will have our regular meeting at Center Grove May 20 at 2 P. M. (Italics ours.)

. "HELEN."

Mrs. Gage testified that the regular meeting place of the Ladies Center Grove Cemetery Association was at Westboro and not Center Grove Cemetery; that the original association continues to hold its meetings at Westboro but the new association meets at the Center Grove Cemetery.

On May 20, 1925, the original association held an adjourned meeting at the home of Mrs. McIntosh. The secretary's minutes of this meeting show the following occurred:

"Now at this time, it appearing that Mrs. Helen Hurley, who was heretofore elected treasurer of the Ladies Center Grove Cemetery Association is refusing to act as such treasurer and has refused to recognize the orders drawn on her by the President and Secretary of the said association and has notified said Ladies Center Grove Association that she is only treasurer of the Center Grove Ladies Cemetery Association and will only recognize such association, and as the said Center Grove Ladies Cemetery Association is not in any way associated or connected with the Ladies Center Grove Cemetery Association, the office of treasurer of the Ladies Center Grove Cemetery Association upon motion of Mrs. F. M. Dunham seconded by Mrs.

J. L. Jackson was by a majority vote of the members present declared vacant.

"Whereupon nominations for the office of treasurer of the Ladies Center Grove Cemetery Association were called for and the following persons were placed in nomination, namely Mrs. Bert Norton and Mrs. Susie Bentley.

"Upon a vote being taken it resulted in the election of Mrs. Susie Bentley."

Defendant had no notice that any action seeking to declare her office vacant was to be taken at this meeting and she was not present. There were no charges and no trial. After this meeting Mrs. Bentley assumed to act as treasurer of the original association, demanding of defendant the money and books in her hands belonging to the association and informing her that the association had declared the office of treasurer vacant and had elected Mrs. Bentley to that position. Defendant refused to deliver either the money or the books but, so far as the record shows, assigned no reason for her action.

The original association had for years kept its money in the Farmers' Bank at Westboro but on or about April 27, 1925, defendant changed it to the Tarkio Valley Bank at Tarkio, there being the sum of $81.98 to the credit of the association at that time. The evidence fails to show in whose name the account is now carried. Apparently after Mrs. Bentley was elected treasurer, the exact time of the occurrence not being shown in the record, Mrs. Amick, the president of the new association, delivered to Mrs. Bentley's husband the following note:

"To Whom It May Concern:

"You are hereby notified that said tract of land that tool house is located on is in the possession of Center Grove Ladies Cemetery Association, also the dishes, tents, stoves, mower, rake, & horses that are used for tables & seats, & we forbid you or any other party to move or attempt to move from said premises.

"Mrs. Lucinda Amick, Prs.

"Mrs. Lottie Sharp, Sec.

"Mrs. Helen Hurley, Tr."

The tract of land and personal property mentioned in this notice were evidently the property of the original association. Each of the rival associations held a dinner at the cemetery on Decoration Day, 1925. It seems that defendant has never met with the original society since the 15th of April, 1925.

Defendant insists that her demurrer to the evidence should have been sustained. A nonprofit voluntary association, such as the one of which plaintiffs are members, seems to occupy an anomalous position in the law. It is not a partnership, yet, in reference to the rights of the members in the property owned by it, they are to be determined

to a large extent by the application of the principles of law peculiar to partnerships. It is stated in 5 C. J., 1334, 1335, in reference to members of an association of this kind that—

". . . whatever may be their relation and liability to third persons dealing with the association, are not partners *inter sese*, since the death of a member does not of necessity work a dissolution of the association, and there exists no authority in a single member to bind the others. This is especially true of associations which are not engaged in business enterprises and the objects of which do not contemplate profit and loss, but which are organized for moral, social, benevolent, literary, scientific, political, or other like purposes, or for the purpose of recreation or amusement. As to these it is generally held that they are not partnerships, and that the members are not partners, either as between the members themselves, or as between a member and the association, or as between members and third persons dealing with them or the association."

In Missouri Bottlers' Ass'n v. Fennerty, 81 Mo. App. 525, 534, it is stated:

". . . the rights of a member in the property of a voluntary association and the remedy to enforce these rights, are not substantially different from those of a partner in partnership property, and a court of equity is the proper tribunal to enforce them (Belton v. Hatch, 109 N. Y. 593; McMahon v. Rauhr, 47 N. Y. 67); and it has been held that some of the members of a voluntary association cannot maintain an action at law in behalf of the association against another member."

Plaintiffs, even though they constituted all the members, other than the defendant, of the old association, cannot maintain an action against her for conversion of the property of the association if she is still a member of the association. In McMahon v. Rauhr, 47 N. Y. 67, 70, it is stated:

"The parties to this action are members with other persons of a voluntary association not incorporated. The object of the association is innocent pleasure, and not trade business adventure or profit. It is not strictly a copartnership, for it does not in its objects fall within the definition of one. [3 Kent 23; Collyet, 263.] But the rights of the associates in the property, and the modes of enforcing them are not materially different from those of partners in the partnership property. [Beaumont v. Meredith, 3 Vesey & Beames, 180.] Prima facie the interest of each associate in the property and effects of the association is equal or proportionate. No associate has an interest therein which can be separated and taken out of the whole for his sole use, until the joint affairs are settled, the association dissolved, the mutual rights of the members adjusted, and the ultimate share of each determined."

As a joint associate with the others, defendant had a joint legal interest with them in the fund and property in question and it is not competent for the members to transfer by a suit at law a joint fund from one of the joint associates to the rest. As far as the property of this association is concerned, the law of partnership applies.

In Montjoy v. Holden (Ky), 12 Amer. Decs. 331, 332, it is said— ". . . it is well settled that unless the goods held in common be actually destroyed, an action of trespass or trover cannot be maintained by one tenant in common, joint-tenant, or partner, against another." [See, also, Ludlum v. Wagner, 209 N. Y. Supp. 540, 542; Dalury v. Rezinas, 170 N. Y. Supp. 1045; Oswalt v. Cronk (Iowa), 190 N. W. 162, 167; Wingate v. Bunton, 193 Mo. App. 470, 476; Merrill v. Mason, 159 Mo. App. 605, 609; Liederkranz Singing Society v. Turn-Verein, 163 Pa. St. 625.] Of course, there is no ground, in any event, upon which plaintiffs can replevy the treasurer's books and records if she is still the treasurer of the original association, for, in that event, she is entitled to the possession of the books of that office.

However, plaintiffs contend that defendant voluntarily withdrew from the original association when she affiliated herself with the rival society and was guilty of the conduct towards the former shown in the record. There is authority to the effect that one who withdraws his membership from a voluntary association of this kind, loses all rights in the property belonging to the association. [5 C. J. 1360; Mo. Bottlers' Ass'n v. Fennerty, supra, l. c. 534.] We do not think that the facts disclosed in the record show as a matter of law that defendant is no longer a member of the original society, nor, in fact, that she is not still its treasurer. It is true that she assisted in the organization of the rival society, has refused to honor requisitions of the officers of the original society for work done at the cemetery and has denied to that society the right to its money and property, and it may be inferred from the evidence that she has assumed the position that the property and money belong to the new society. However, she has kept her dues paid up in the original society and has never formally resigned as a member or as treasurer of that society. Of course, as a legal proposition it is not impossible for her to be treasurer of both societies. It would appear from the record that she has been remiss in her duties as treasurer of the original society but that she has never directly resigned such office or her membership in it. In Farrel v. Cook, 11 N. Y. Supp. 326, the president of a voluntary association became a member and officer of a rival association, the constitution of which provided that no member thereof should remain a member of any other organization such as the former, under penalty of expulsion. It was held that he remained a member and president

of the first society. [See, also, Strong v. Los Nietos, etc., Association, 137 Calif. 607.]

As far as the meeting of the old society held on the 20th of May, 1925, in which the office of treasurer was declared vacant, there is no claim that the association attempted at this meeting to remove defendant· but the claim is that defendant had already removed herself by her conduct. Had any attempt been made to remove defendant at this meeting, it would have been without avail because no notice was given her and she was not given an opportunity to be heard. [Mo. Bottlers' Association v. Fennerty, supra, l. c. 533; Goller v. Stubenhaus et al., 134 N. Y. Supp. 1043.] Of course, we need not go into the legal effect of the association's act at that meeting taken in the absence of any provision in the constitution and laws of the association providing for the removal of officers or the forfeiture of a membership.

However, we would not be justified in holding as a matter of law that defendant has not by her conduct, in effect, impliedly withdrawn from the old association. It is a question of fact, depending upon her intention in the matter. [Strong v. Association, supra.] There is a strong inference to be drawn from the evidence, taken as a whole, that she has denied the legal existence of the original association. As before stated, she apparently is claiming that that association is not entitled to any of its funds or property but that these belong to the new association. Of course, defendant is a member of the new association and a joint owner of its funds and property. In her letter to her sister, Mrs. Gage, she strongly intimates that she is the treasurer of the new association and will recognize none other and that the new society is performing, exclusively, the functions of the old. She has ceased to attend the meeting of the old association and has substantially refused to discharge her duties as its treasurer. If it were not for the fact that she has kept her dues paid up in the old association, a jury could well say that she has done everything she could to withdraw from the old association, short of handing in a formal resignation. [See, McFadden v. Murphy, 149 Mass. 341.] The evidence is extremely meager in reference to many material points in the case and does not disclose as clearly as might be when it was that defendant last paid her dues. It may have been that she paid them before she became a member of the new association or assumed her antagonistic attitude toward the old. If this is so, then the whole matter would be for the consideration of the jury as to whether she has not abandoned the old association since paying her dues. As the case must be retried, no doubt these matters will be more clearly shown.

Plaintiffs' instruction No. 1, covering the first count of the petition and directing a verdict, and instruction No. 2, covering the second

and likewise directing a verdict on that count, are clearly erroneous. They wholly fail to have the jury find that plaintiffs were entitled to the possession of the money and property. [Sebastian County Coal & Mining Co. v. Fuel Co., 274 S. W. 774; Schwald v. Brunjes, 139 Mo. App. 516; 34 Cyc. 1368, 1387, 1388.] They could not be cured in this respect by defendant's instructions. [State ex rel. v. Ellison, 272 Mo. 571; Perry v. Fleming, 296 S. W. 167.] Instruction No. 1 directs a verdict merely upon a finding that defendant was treasurer of the association and having the money in her possession failed to conform to the laws of the association and refused to pay out of the money, upon the order of the president and secretary, claims against it, and that plaintiffs, or any of their officers or agents, made demand upon her for the money in her hands belonging to the association. The instruction wholly ignores the question as to whether defendant is still a member of the association. The facts submitted do not show even that she was no longer its treasurer. Instruction No. 2 directs a verdict merely upon the finding that defendant failed to perform the duties devolving upon her as treasurer and refused to pay the bills as submitted in the first instruction; that her office was declared vacant by the association; that Mrs. Bentley was elected in her place; that the latter had demanded of defendant the property sought to be replevied, and defendant refused to turn it over to her. Instruction No. 2 ignores the question, as does the first instruction, as to whether defendant is still a member of the association.

Some question has arisen as to whether all of the members of the original association have been made parties to this suit. At another trial it will be necessary, in order to make the petition invulnerable to attack on the ground that there is a defect in parties, to join all of the members as parties. [5 C. J. 1365.]

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.