Richard FARRAR, John Allers, Laverne Kelly et al., Individually, and Also for and on Behalf of All Other Members of Independent Union of Paper Workers, an Unincorporated Labor Organization, Plaintiffs-Appellants,

v.

Paul E. MESSMER, James B. Rhine, Charles Lesley, et al., Individually, and as Representatives, Officers, and Agents of Independent Union of Paper Workers, an Unincorporated Labor Organization, Defendants-Respondents.

No. 31329.

St. Louis Court of Appeals.

Missouri.

June 14, 1963.

Motion for Rehearing or for Transfer to Supreme Court Denied July 12, 1963.

Schuchat, Cook & Werner, Charles A. Werner, St. Louis, for plaintiffs-appellants.

Tralles, Hoffmeister & Gilpin, Carroll C. Gilpin, Levin & Weinhaus, S. Sheldon Weinhaus, Morris J. Levin, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

Plaintiffs, twenty-three in number, appeal from an order dismissing their petition with prejudice.

Their petition is in three counts, and for the purpose of this review, each will be considered separately. In Count I plaintiffs allege that they are employees of Cupples-Hesse Company, Division of St. Regis Paper Company, in St. Louis, and are members in good standing of the Independent Union of Paper Workers, an unincorporated labor organization, hereafter referred to as "Independent Union"; that they sue as members of a class, the majority of the members of the Independent Union, which they fairly and adequately represent; that the defendants are the last elected officers and members of the Executive Committee of the Independent Union; that the Independent Union is a local labor organization, founded about 1956, which formerly

represented the employees in St. Louis working at the American Seal-Kap Corporation and Cupples-Hesse Company; that in the Spring of 1961 American Seal-Kap moved its operations out of town and that on or about July 14, 1961, in an election conducted by the National Labor Relations Board to determine whether the Independent Union, the International Brotherhood of Bookbinders, AFL–CIO, or neither, would be the exclusive bargaining representative of the production and maintenance employees of the Cupples-Hesse Company, said employees chose the International Brotherhood of Bookbinders (hereafter called the Bookbinders); and that on July 24, 1961, the NLRB certified the Bookbinders as the exclusive bargaining agent.

Plaintiffs further allege in Count I that "Following the certification * * *" (no date is stated) four members in good standing of the Independent Union, pursuant to Article XI of the Constitution and By-Laws of the Independent Union (attached to the petition as Exhibit B), submitted the following proposed amendments of the Independent Union's Constitution and By-Laws to its Executive Committee:

" 'Be it resolved that all funds, moneys, records, books, and other properties of the Independent Union of Paper Workers be transferred to the Envelope Division of Local 18, International Brotherhood of Bookbinders, AFL–CIO.

" 'Be it resolved that we herewith dissolve and abandon the Independent Union of Paper Workers.' "

That pursuant to Article III, Section 7 of such Constitution the first regular membership meeting after the July 14, 1961 election was the September meeting, scheduled for the first Tuesday of September; that subsequent to the submission of the foregoing amendments to the Executive Committee and prior to the September meeting, " * * the Executive Committee took no action on said Amendments, even though, on information and belief, the Executive Committee met at least two times prior to the regular

membership meeting in September after said submission"; that at the regular membership meeting held on September 5, 1961, " * * * the following Amendments (to the Constitution and By-Laws) were submitted to the members present at said meeting, said Amendments supported by a petition signed by one-third (⅓) of the membership of the Independent Union, to-wit: 109 of the 233 members in good standing:

" 'Be it resolved that all funds, monies, records, books and other properties of the Independent Union of Paper Workers be transferred to the International Brotherhood of Bookbinders, AFL–CIO effective September 5, 1961, provided, however, that any person who is not a member of the International Brotherhood of Bookbinders or has not submitted an application to become a member of the International Brotherhood of Bookbinders can obtain his pro rata share of the aforesaid funds, monies, and other properties.

" 'Be it resolved that we herewith dissolve and abandon the Independent Union of Paper Workers.'

Both of the Amendments were adopted by a majority of the members present in a secret ballot vote."

Plaintiffs further plead in Count I that on September 6, 1961, in conformance with the amendments adopted at the meeting held on September 5, 1961, they demanded of defendants that defendants transfer the funds, moneys, books and other properties of the Independent Union to the Bookbinders, subject to the provision that any member of the Independent Union who was not a member of or who had not submitted an application for membership to the Bookbinders could obtain his pro rata share of the assets of the Independent Union; that the defendants refused to transfer the assets of the Independent Union to the Bookbinders; that on September 8, 1961, and prior to the filing of plaintiffs' petition, 163 members in good standing of the Independent Union individ-

ually and collectively adopted and ratified "the resolutions" passed at the September 5, 1961, meeting of the Independent Union by signing a petition to that effect, which petition was marked Exhibit A, attached to plaintiffs' petition, and so declared; that the defendants have custody of the assets of the Independent Union, which on information and belief plaintiffs allege consist of one tape recorder machine, one movie projector and screen, one public address system, one mimeograph machine, and cash, bank accounts or savings certificates in an estimated amount of $12,000; that defendants have secreted said property and refused to reveal to plaintiffs where it is located; that plaintiffs are in danger of losing said property by dissipation or depreciation; that their damages are conjectural; and that they have no adequate remedy at law.

In their prayer in Count I plaintiffs ask that: " * * * the Court direct and order defendants to carry out the Amendments adopted at the membership meeting of September 5, 1961 * * *"; for such damages as the court might find has accrued to the property by dissipation or depreciation; for general relief; and for their costs.

Exhibit B, attached to the plaintiffs' petition, is titled "Constitution and By-Laws of Independent Union of Paper Workers." Pertinent provisions will be referred to where appropriate, but for our immediate purpose the only provision we need notice is "Article XI—Amendments to By-Laws," which is as follows:

"Section 1. Amendment to these By-Laws may be suggested by three members in good standing of the Union, the same to be submitted to the Executive Committee in writing.

"Section 2. Such amendment or amendments shall be acted upon by the Executive Committee and a majority vote of said Executive Committee shall be necessary to approve such amendment or amendments.

"Section 3. After approval by the Executive Committee the same shall be considered at the next regular or special meeting of the Union. Notice of such meeting shall be given to the membership at least three days prior thereto, which notice shall set out the proposed amendment. A majority vote by secret ballot of the members present at said meeting shall be necessary to adopt such amendment or amendments.

"Section 4. Should an amendment be rejected by the Executive Committee it may be resubmitted at the next regular meeting of the Union, provided it is supported by a petition signed by one-third (1/3) of the membership."

Defendants moved to dismiss all counts of plaintiffs' petition, their primary ground being that none of them state a claim upon which relief can be granted. Presumably after a hearing thereon (while the transcript does not so state, no contention to the contrary is raised on appeal) the Court sustained defendants' motion to dismiss, and after an unsuccessful motion to set aside that order or in the alternative for "a new trial," plaintiffs appealed.

■ Learned counsel for both parties, by agreeing in their excellent briefs on certain principles of law and matters of fact, have markedly narrowed the area of disagreement. Thus both agree that the relationship existing between a voluntary labor organization and its members is contractual, and that the constitution and by-laws, if any, constitute the contract, which the court will enforce, if it is not immoral, contrary to public policy or the law of the land, or unreasonable. Junkins v. Local Union No. 6313, Communication Workers of America, 241 Mo.App. 1029, 271 S.W.2d 71; Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374; Hall v. Morrin, Mo.App., 293 S.W. 435. Both further agree that the Constitution and

By-Laws of the Independent Union did not mention or refer in any way to the subject of dissolution, and that there was, of course, no provision for the disposition of its assets upon dissolution. Lastly, both agree, expressly or tacitly, that the Independent Union could be dissolved and its assets transferred or distributed.

The apparent scope of our review may be further narrowed by certain general observations. The first of these is that the parties do not quibble about the form of the propositions submitted to the Executive Committee, or those voted on at the membership meeting of September 5, 1961; although in truth both sets of proposals more closely resemble resolutions than they do amendments to the Constitution and By-Laws. Secondly, it will be perceived that the proposal concerning the disposition of the property of the Independent Union which was submitted to the Executive Committee differs materially from that submitted to and voted upon by the members at the regular meeting of September 5. Under the former all assets are to be transferred to the Bookbinders while under the latter a member of the Independent Union who is not a member of the Bookbinders or has not submitted an application for membership to it is to receive his pro rata share of the Independent Union's funds. Thirdly, while the plaintiffs plead in the body of their petition that they had submitted the first set of proposals to the Executive Committee, and that the Executive Committee took no action thereon prior to the membership meeting, it will be noted that they do not seek to establish the validity of the first set of proposals. The only relief for which they pray is that "* * * the Court direct and order defendants to carry out the Amendments adopted at the membership meeting of September 5, 1961, as set forth hereinabove in paragraph 5, and as ratified and adopted by a majority of the members of the Independent Union in Exhibit A of this petition. * * *"

■ Lastly, throughout their brief defendants refer to the plaintiffs and those whom plaintiffs represent as the "withdrawing majority" and treat them as having withdrawn from membership in the Independent Union. If this was in fact the case the controversy would be easily resolved, for as defendants point out in their brief, it has been repeatedly held that in the absence of a contrary provision in the constitution or by-laws, the ownership of the property or funds of a voluntary association is vested in the members jointly, or held by the officers in trust for the membership; that a member does not have a severable right to any of its property or funds; and that upon his withdrawal or lawful expulsion the member loses all his rights in such property or funds of the association.[1] But there is nothing in plaintiffs' petition which supports the view that plaintiffs and those they represent have withdrawn from the Independent Union. In fact, their allegations are to the contrary, for throughout their petition they refer to themselves as " * * * members in good standing of the Independent Union of Paper Workers * * *." Nor do they allege that they are members of the rival labor union, the Bookbinders; and even if we were to assume, from the objective of their action, that such was the case, it would not necessarily follow that they had thereby withdrawn from the Independent Union. There is nothing in the Constitution and By-Laws of the Independent Union which forbids dual unionism. See Bentley v. Hurley, 222 Mo.App. 51, 299 S.W. 604. In determining the sufficiency of plaintiffs' petition to state

1. Thadeus Kosciuszko Society v. Polish Home Ass'n, Mo.App., 218 S.W.2d 811; Bentley v. Hurley, 222 Mo.App. 51, 299 S.W. 604; Missouri Bottlers' Ass'n v. Fennerty, 81 Mo.App. 525; McRoberts v. Moudy, 19 Mo.App. 26; 87 C.J.S. Trade Unions § 38, pp. 827–828; 4 Amer.Jur., Associations and Clubs, Sec. 33, p. 476.

a claim upon which relief can be granted we must accept as an allegation of an ultimate fact plaintiffs' averments that they are members in good standing of the Independent Union.

Having eliminated those matters which we need not consider, we turn to those remaining for determination. We said earlier that both parties agree, expressly or tacitly, that the members could by proper action effect the dissolution of the Independent Union and the distribution of its funds. They differ, however, and sharply, on whether the procedure followed by the plaintiffs in the instant case was lawful and proper under the Constitution and By-Laws of the Independent Union. Plaintiffs forcefully argue, first, that the proposals adopted at the membership meeting of September 5 were presented and adopted in accordance with Article XI of the Constitution and By-Laws which governs amendments. And second, that in the absence of any specific provision to the contrary, the adoption of such proposals to dissolve and to distribute the property and funds by the vote of a majority of the members was valid and sufficient, citing Wrightington on The Law of Unincorporated Associations and Business Trusts, 2nd Ed., Sec. 69, p. 420; Harker v. McKissock (App.Div.) 10 N.J.Super. 26, 76 A.2d 89, and other authorities. Defendants contend, with equal vigor, that such proposals were not adopted in accordance with the requirements of Article XI; and that propositions to dissolve and to distribute the property and funds could be adopted only by a unanimous vote of the members, citing Harris ex rel. Carpenters Union, etc. v. Backman, 160 Or. 520, 86 P.2d 456; Liggett v. Koivunen, 227 Minn. 114, 34 N.W.2d 345, and other cases.

■ Because of the conclusion we have reached as to the first controverted issue we need not consider the second. Regardless of the differences in their views regarding the number of votes required to effect the dissolution of a voluntary association,[2] all of the authorities agree that the measure, whether an amendment or a resolution, must be adopted in accordance with the organic law of the association.[3] In the instant case the Constitution and By-Laws of the Independent Union requires that an amendment must first be submitted in writing to and acted upon by the Executive Committee. If the Executive Committee *approves* the amendment it is then to be considered at the next regular or special meeting of the Union, after due notice to each member. It is only when the Executive Committee *rejects* a proposed amendment that it may be submitted to the membership, provided it is supported by a petition signed by at least one-third of the members. Putting aside the question of lack of notice when an amendment is presented to the meeting on petition of one-third or more of the members, after rejection by the Executive Committee (see Swaine v. Miller, 72 Mo. App. 446) it is apparent from plaintiffs' petition that the first proposal, to distribute the property and funds of the Independent Union in the manner described therein, has never been submitted to the Executive Committee, much less been rejected by it.

■ As to the proposal to dissolve, while it has been submitted to the Executive Committee, that body has never rejected it, and absent such rejection it could not be presented at the meeting even though supported by a petition signed by one-third or more of the members. Plaintiffs do not charge any fraud or bad faith on the part of the Executive Committee, nor do they allege that it would have been a vain and useless act to have awaited the action of the Executive Committee. Robinson v.

2. See also in that regard Kuhl v. Meyer, 42 Mo.App. 474; and McRoberts v. Moudy, 19 Mo.App. 26.

3. Wrightington, supra; Hall v. Morrin, Mo.App., 293 S.W. 435; Froelich v. Musicians Mut. Ben. Ass'n, 93 Mo.App. 383; Kuhl v. Meyer, supra; 7 C.J.S. Associations § 9, p. 27; 4 Amer.Jur., Associations and Clubs, Sec. 55, p. 490.

Nick, 235 Mo.App. 461, 136 S.W.2d 374; Junkins v. Local Union No. 6313, C. W. A., supra. Nor do plaintiffs charge that the Executive Committee refused to act, or that it was engaging in dilatory tactics. All that they plead, on information and belief, is that the Executive Committee met at least twice between the time when the proposals were submitted to it and September 5, when the meeting was held, and "took no action" on the proposals. This is a far cry from a charge of an arbitrary or capricious refusal to act. Nor is it to be necessarily inferred that the Executive Committee was guilty of procrastination. In fact, it is impossible to ascertain from plaintiffs' petition when plaintiffs submitted the first set of proposals to that body. The only reference to when such action was taken by plaintiffs is that it was "Following the certification * * *" of the Bookbinders by the NLRB, which may have been at any time between July 24, when such certification was made, and September 5, when the regular meeting was held.

■ From what we have said we believe it is evident that the plaintiffs' proposed amendments are void because they were not adopted in accordance with the organic law of the Independent Union. Hall v. Morrin, Mo.App., 293 S.W. 435; Froelich v. Musicians Mut. Ben. Ass'n, 93 Mo.App. 383; Kuhl v. Meyer, 42 Mo.App. 474. It follows that the court's action in refusing to enforce them and in dismissing Count I of plaintiffs' petition was correct.

In Count II of their petition plaintiffs incorporate by reference the matters pleaded in Count I, and pray that in the event the court should not grant the relief prayed in Count I "then as an alternative but secondary prayer for relief, plaintiffs pray that the court enter its order directing all of the money and property of the Independent Union be distributed to the members in good standing of the Independent Union, as of the date of the filing of this suit, on a pro rata basis, each member to receive an equal share of said money and of the monetary proceeds of said property; * * *." Thus the plaintiffs seek a judicial dissolution of the Independent Union and the distribution of its property and funds. The sole argument advanced in support of the cause of action attempted to be pleaded in Count II, as stated in plaintiffs' brief, is that " * * * When the employees of Cupples-Hesse Company rejected and voted out the Independent Union as their exclusive collective bargaining representative, their action set up a failure or frustration of the stated purposes for which the organization had been formed in 1956. Since the American Seal-Kap Corporation had moved its operations out of St. Louis in the spring of 1961, with the rejection of the Independent Union at Cupples-Hesse, the Independent Union no longer represented for collective bargaining purposes any employees in any plant."

■■ It is true that a court of equity has jurisdiction to decree the dissolution of a voluntary association and to order the distribution of its assets where it clearly appears that its operations have been abandoned by the common consent of its members and it is apparent that the objects and purposes for which it was formed can no longer be carried out. But equity will not dissolve such an association where there remain a sufficient number of members, even though they be a minority, who are ready and willing to continue its operations and execute the objects and purposes for which it came into existence. Kuehl v. Meyer, 50 Mo.App. 648; Kuhl v. Meyer, 42 Mo.App. 474; 7 C.J.S. Associations § 9, pp. 28–30; 4 Amer. Jur., Associations and Clubs, Sec. 54, p. 490. The weakness in plaintiffs' position is in assuming that in losing one battle the Independent Union thereby lost the war. The loss of bargaining rights of the Cupples-Hesse employees was undoubtedly a serious blow to the Independent Union

but it is not necessarily a fatal one. It is apparent from the figures given in plaintiffs' petition that a substantial number of its members, ample to carry out its purposes and functions, remain loyal to it. There is nothing to prevent them from organizing the employees of other employers. For that matter, there is nothing to prevent them from continuing to do battle with the Bookbinders by recapturing the allegiance of those who have currently allied themselves with that organization, and, at the proper time, petitioning for another representation election. 29 U.S.C.A. § 159(c) (3). It is obvious that the facts alleged fall far short of those necessary to induce a court of equity to decree the dissolution of the Independent Union and that Count II was therefore properly dismissed.

In paragraph one of Count III of their petition plaintiffs again incorporate by reference the matters alleged in Count I, and, in addition, in the succeeding paragraphs plead "2. Since the time when it was organized the Independent Union has been collecting dues from plaintiffs at an estimated rate in excess of $8,000 per year. 3. Defendants, particularly during the period of the last two years, have failed and refused to provide plaintiffs with an adequate accounting of the total amount of dues collected by the Independent Union. Defendants have further failed and refused to provide plaintiffs with a full and adequate explanation and accounting of disbursements made from the assets of said union. 4. On information and belief, defendants have made or permitted expenditures or disbursements from the assets of the Independent Union without securing authorization for such expenditures and disbursements in accordance with the Constitution of the Independent Union or from the membership of the Independent Union. 5. Said receipts and disbursements by the Independent Union are of a complicated nature. 6. All of defendants stood in a fiduciary relationship to said Independent

Union and to plaintiffs, as members of said Union." In their prayer plaintiffs ask that the court enter an order and decree "requiring defendants, and each of them, to account to plaintiffs for all of their acts with respect to money and property of the Independent Union"; that the court enter judgment against defendants for any money or property unaccounted for, and for any unauthorized disbursements; for general relief; and for their costs.

■ Plaintiffs contend that the court erred in dismissing Count III because the usual and proper procedure in a suit for an accounting is to first hear and determine the question of whether or not the petitioner is entitled to an accounting, and then to enter an interlocutory decree so finding or a decree denying the relief sought, citing Adams v. Adams, Mo., 294 S.W.2d 18 and Ewalt v. Hudson, Mo.App., 223 S.W.2d 132. That is undoubtedly the rule if the petition states a claim upon which the relief sought can be granted. But a petition for an accounting, like any other petition, must contain *facts* showing that the pleader is entitled to the relief prayed, not mere *conclusions*. Dahlberg v. Fisse, 328 Mo. 213, 40 S.W.2d 606; Young v. Southwestern Bell Telephone Co., 318 Mo. 1214, 3 S.W.2d 381; Sandwich Mfg. Co. v. Bogie, 317 Mo. 972, 298 S.W. 56. We are not unmindful of the rule that in determining the sufficiency of a petition to state a claim upon which relief can be granted, the averments are to be given a liberal construction and the petition accorded those reasonable inferences fairly indulged from the facts stated. Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52; Royster v. Baker, Mo., 365 S.W.2d 496. However, " * * * The conclusions of the pleader are not to be considered in determining whether plaintiffs have stated a cause of action, * * * because the averment of a legal conclusion is not a statement of an issuable fact and is to be treated as no statement at all."

Goodson v. City of Ferguson, Mo., 339 S.W.2d 841, 845; Royster v. Baker, supra.

The basic allegations of plaintiffs' claim appear in paragraphs 3 and 4. It will be noted that plaintiffs do not charge that the defendants refused to render any accounting of receipts and disbursements. What they allege is that the defendants failed and refused to provide "an adequate accounting" and a "full and adequate explanation and accounting". The effect of these allegations, of course, is that the defendants did render an accounting, but that in the opinion of the plaintiffs it was not full and adequate. In what respect the accounting rendered by defendants failed to meet the unknown standards established by plaintiffs is not stated, and is left to speculation and conjecture. Obviously such allegations are but mere conclusions of the pleader, to be disregarded in determining whether a claim upon which relief may be granted has been stated in the petition.

In that connection it is to be particularly noted that plaintiffs do not refer to or attempt to plead a cause of action as authorized by the Labor-Management Reporting and Disclosure Procedure Act of 1959, 29 U.S.C.A. § 431. That Act requires every labor organization to file annually with the Secretary of Labor a financial report showing the assets and liabilities of the union at the beginning and end of its fiscal year; receipts of any kind and the source thereof; the salary, allowances and disbursements to each officer and employee receiving more than $10,000 in the aggregate per year; the direct and indirect loans made to any officer, employee or member which aggregated more than $250 during the year; any other direct and indirect loans; and "other disbursements made by it including the purposes thereof," in such categories as the Secretary may prescribe. Sec. 431 (b). Paragraph (c) of that section provides that "Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. * * *" If these defendants have failed and refused to comply in every respect with the requirements of that Act it would have been a relatively easy matter for the plaintiffs to state in what manner defendants violated or were derelict in their statutory duties.

A similar infirmity is evident as to paragraph 5 of Count III. The charge that the defendants have made or permitted disbursements from the assets of the Independent Union without securing authorization for such expenditures and disbursements "in accordance with the Constitution of the Independent Union or from the membership of the Independent Union" is likewise a mere conclusion. No facts are alleged as to what authorization, whether of the membership or otherwise, these defendants were required to obtain before making or countenancing disbursements. No provision of the Constitution and By-Laws is pointed to which specifies the authorization required. In truth, the organic law of the Independent Union, as contained in the Constitution and By-Laws attached to plaintiffs' petition, shows that these defendants as the officers and members of the Executive Committee are therein given full authority to disburse the funds of the Union for legitimate purposes without securing the authorization of any other body, or of the membership. And it is to be borne in mind that plaintiffs do not allege, as in Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374, that

defendants have misappropriated the funds of the Independent Union or diverted them to their own use and benefit.

■ We likewise regard as a conclusion the allegation in paragraph 5, standing alone, that, "Said receipts and disbursements by the Independent Union are of a complicated nature." It follows that for the failure to allege facts showing that the plaintiffs are entitled to an accounting Count III was properly dismissed.

It is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and JACK P. PRITCHARD, Special Judge, concur.