UNIÓN DE EMPLEADOS DE LA INDUSTRIA DEL TELÉFONO, LOCAL 962, ETC., ET AL., Plaintiffs and Appellees, *v.* DAVID MEDINA ET AL., Defendants and Appellants.

No. 606.        Decided May 27, 1964.

*Martín Almodóvar Acevedo* and *Nicolás Nogueras, Jr.,* for appellants. *Luis G. Estades* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

According to the findings of fact of the trial court, the Unión de Empleados de la Industria del Teléfono de Puerto Rico, affiliated with the Puerto Rico Free Federation of Labor, existed prior to 1943, functioning under said name since said date; that as such union it executed several collective bargaining agreements with the Puerto Rico Telephone Company; that at the commencement of this action David

Medina, Gabino Padilla, Libertad G. de Pantoja and Laura E. Acevedo Álvarez were President, Secretary, Vice President, and Treasurer of defendant Union; that said Union owned a house and lot situated on Hoare Street in Santurce, a Chevrolet sedan, a bank account and some office equipment; that on November 25, 1957 the National Labor Relations Board held elections among all the employees of the Puerto Rico Telephone Company, to elect their representative between Packinghouse Labor Union of Puerto Rico and the Unión de Empleados de la Industria del Teléfono, affiliated with the Puerto Rico Free Federation of Labor; that Packinghouse Labor Union of Puerto Rico won the election although the Unión de Empleados de la Industria del Teléfono, affiliated with the Puerto Rico Free Federation of Labor obtained 442 votes of a total of 989 valid votes; that the National Labor Relations Board certified the Packinghouse Labor Union as the contracting Union for collective bargaining purposes; that according to said certificate Packinghouse Labor Union of Puerto Rico executed a collective bargaining agreement with the Puerto Rico Telephone Company effective until May 6, 1962; that on October 20, 1959, the certificate of representation was amended by the Labor Relations Board to include, besides the Packinghouse Labor Union of Puerto Rico, the Unión de Empleados de la Industria del Teléfono, Local No. 962, affiliated with the Packinghouse Labor Union; that on January 22, 1960 the incorporation of the Unión de Empleados de la Industria del Teléfono (FLT), Inc., was recorded in the office of the Secretary of State; that defendant-appellant Union is in possession of the property and said Union is not nor has it ever been affiliated with the Packinghouse Labor Union; that § 19, paragraph six of the Regulations of the Unión de Empleados de la Industria del Teléfono de Puerto Rico, then affiliated with the Puerto Rico Free Federation of Labor reads as follows: "All funds and property of the locals, as well as documents, etc., shall belong

to the Unión de Empleados de la Industria del Teléfono de Puerto Rico, affiliated with the Puerto Rico Free Federation of Labor," and § 21 of said Regulations says: "This Union may not be dissolved as long as there are seven (7) active members."

The reasons at law which the trial court had for ordering defendant union, appellant herein, to deliver the property to plaintiff union, appellee herein, were the following: The Constitution and Regulations of a labor union is a contract between the members or between the Union and its members or between a union and another union with which it is affiliated. Said Constitution and Regulations are, therefore, law among them, and bind them as long as they are validly approved and unless they contain something contrary to the morale or public policy or may turn out to be discriminatory or unreasonable. Section 19 of the Regulations of plaintiff union, paragraph six provides: "that all the funds and property of the locals, etc., belonged to the Unión de Empleados de la Industria del Teléfono de Puerto Rico, affiliated with the Puerto Rico Free Federation of Labor"—as we have seen, at that time the union was affiliated with the Free Federation of Labor—but it appears from the evidence that in elections duly held, plaintiff union, affiliated with the Labor Union of Puerto Rico won over its opponent and obtained its certificate as the sole and exclusive representative of all the employees of the Puerto Rico Telephone Company. The trial court understands that said funds and property are considered as a trust for the benefit and common use of all the members of the local union and that the same shall be adjudicated in favor of the majority which freely, legally and voluntarily obtains victory in the elections, with the right to possess and manage said property as the sole and lawful trustee or receiver of the trust and collective desires of said workers and employees, provided that on the day they cease to be depositary of said trust by elections, the fiduci-

aries of said property shall return the same to their successors without disposing or withholding for themselves what should be delivered at the expiration of their agency. The will of the parties, on confirmation of the Regulations, becomes the law between them, and should be obeyed pursuant to the provisions of said Regulations.

In the grounds for review, defendant union, appellant herein, assigns five errors, of which we shall consider only two, because the others lack merits: (1) the trial court erred in deciding, as a question of law, that the funds and property in possession of defendant union, appellant herein, are considered as property in trust for the common use of all the members of the local union, and that the same shall be adjudicated in favor of the majority, which freely, legally and voluntarily obtains the victory in elections; (2) likewise, the trial court erred, in spite of its own findings of fact and conclusions of law, as to the effectiveness and validity of the Regulations of defendant union, appellant herein— § 19, paragraph 6 and § 21—in deciding that all property and assets of defendants-appellants should be delivered to plaintiffs-appellees.

1–2: By the terms of the stipulation of facts, which serves as a basis for the findings of fact proved by the trial court, we start from the premise that this is a case of a dispute between two local unions, the latter formed from a secession of the former. The first question we must ask ourselves is whether there has been a complete and total disaffiliation from the whole membership or whether it has only been a mere disaffiliation from the majority. When it is the majority which forms a new local union, the parent organization, also called the loyal minority, retains the property and assets under the theory that said minority continues under its former charter and its juridical existence as an association has not been terminated. Stated in the terms of our own case law—*Adelphia Lodge* v. *Adelphia Lodge*, 72

P.R.R. 456, 468 (Snyder) (1951)—"Where as here two rival groups both claim to be an organization which owns property, the courts ordinarily award the property to that group which has operated within the framework prescribed by the constitution and by-laws which are the contract governing the organization." See also 23 A.L.R.2d 1227, § 11 (1952). It is only when the secession from the parent organization is so numerous that it remains without strength to compete and function in the future that its union existence is considered terminated, and in such a case the funds and property are transferred to the new union organized or are distributed among the members, as provided by the constitution or the bylaws of the former organization: *Liggett* v. *Koivunen*, 34 N.W.2d 345, 349 (Matson) (1948); *Farrar* v. *Messmer*, 368 S.W.2d 933, 939–940. (Doerner) (1963). The inability may also be produced when the parent organization is frustrated by the unscrupulous manners of a group of profiteers or agitators for political purposes; *Bradley* v. *O'Hare*, 202 N.Y.S.2d 141, 157 *et seq*. (Breitel) (1960).

The manner of how to dispose of the title over the property of a labor union, when the disaffiliation of part of the membership is produced, has been studied, applying different theories taken from the principles which govern charity associations, implied contractual obligations, fiduciary relationships and other specialties of the contractual institute. None of said theories, however, has been able to establish the body of principles on which one can invariably depend. Some of the decisions on the matter, *Bradley* v. *O'Hare*, 202 N.Y.S.2d 141, 150 *et seq*. (Breitel) (1960); *Crocker* v. *Weil*, 361 P.2d 1014, 1019 *et seq*. (Sloan) (1961)—contain an excellent criticism on the efficacy of said theoretical pronouncements in the presence of the diversity of the unions' interest and the different situations in fact arising from the labor union complex. There is, however, a wholesome tendency to consider the local union as the keystone of every labor organization—

448

see *Crocker* v. *Weil*, 1022 *supra.* This has sufficiently modified the initial tendency to consider the affiliation with international organizations as the interest that should prevail in the labor system.

In brief: When a controversy arises over the ownership rights of the assets of a local labor union between two factions of the same union, although the seceding faction constitutes the majority, the property belongs to the loyal minority which remains within the original structure of the union, unless the evidence shows the frustration of said minority union to continue complying with the stated purposes for which the organization was formed. *Farrar* v. *Messmer*, 368 S.W.2d 933, 939–940 (Doerner) (1963).

As to the foregoing the judgment rendered by the Superior Court of Puerto Rico, San Juan Part, on September 15, 1961 will be dismissed.